MARROBIE *v.* MARROBIE.

1. DIVORCE—CREDIBILITY OF PARTIES.

Decree of divorce, based upon findings of fact by the trial judge who listened to the parties and their witnesses give different versions of various events is not disturbed, where based largely upon an evaluation of the credibility of the parties.

2. SAME—AWARD OF PROPERTY.

Decree of divorce awarding substantially all of the property to the wife is not disturbed, where it appears the couple are childless, that the wife has been employed outside of the home all of the time during marriage lasting 18 years and that the husband had gambled away or hypothecated much of the earnings of the parties.

3. SAME—HOME—HOUSEHOLD FURNITURE.

Decree of divorce awarding home of the parties to the wife is modified to award to her the household furniture and furnishings, where she has been employed outside the home during entire marriage of 18 years and been the sole support of herself and husband during a part of the time.

4. SAME—DIVISION OF PROPERTY—VACANT LOT.

Vacant lot, valued at $400, is awarded to husband in suit for divorce, where decree of trial court is silent on the matter and most of the rest of the property was awarded the wife.

5. SAME—ALIMONY.

A court cannot make an allowance of alimony after granting a decree of absolute divorce, where no alimony was awarded nor reservation of the question of alimony made.

6. SAME—EXTREME CRUELTY—EVIDENCE.

Plaintiff wife's conduct *held,* not such as to support husband's claim of extreme cruelty on her part nor to defeat her cause for divorce.

7. SAME—EXTREME CRUELTY—EVIDENCE.

Nonsupport, constituting extreme cruelty on the part of husband, *held,* to have justified decree of divorce to wife (CL 1948, § 552.8).

---

REFERENCES FOR POINTS IN HEADNOTES

[2–4] 17 Am Jur, Divorce and Separation § 445.
[5] 17 Am Jur, Divorce and Separation §§ 514, 626 *et seq.*
[7] 17 Am Jur, Divorce and Separation § 155.

**8. SAME—COSTS.**

No costs are allowed on husband's appeal in suit for divorce, where decree was modified on appeal and neither party prevailed in full.

Appeal from Wayne; Miller (Guy A.), J. Submitted June 4, 1952. (Docket No. 24, Calendar No. 45,226.) Decided September 3, 1952.

Bill by Ann Marrobie against Abe Marrobie for divorce on ground of extreme cruelty. Decree for plaintiff. Defendant appeals. Modified and affirmed.

*E. O. Kugel,* for plaintiff.

*Arthur Mitchell,* for defendant.

REID, J. Defendant Abe Marrobie appeals from a decree of divorce granted to the plaintiff, which decree dismissed defendant's cross bill, and defendant appeals, also, from the award of property to plaintiff.

The parties were married July 12, 1930, at Toledo, Ohio, by a justice of the peace. They have no children. The parties live in the city of Detroit, and have lived in Detroit for more than 2 years last past. They separated about July 10, 1948. During part of the early years after the marriage, defendant was ill and unable to work. Plaintiff had to work at housework for other people and also in a restaurant until defendant was able to work. She went to work for Bundy Tubing November 11, 1936, because she had no money, though defendant was then able to work. Plaintiff testified that from her earnings she maintained the home, bought groceries and took care of the bills, and what was left of her earnings, she put in the "kitty," *i.e.,* a safe for their joint savings.

She worked steadily at Bundy Tubing and is still employed there.

Plaintiff testified that the defendant used vile and cursing language toward her, and also that he falsely accused her of associating with other men. She claims that she drove some of her fellow employees in her car from their employment for their return to their residences, but denies improprieties. She claims that her working and earning of wages was made necessary by the insistence of defendant, during about 14 years of their married life.

Defendant admits that he lost $2,000 to $2,500 in gambling; plaintiff claims that he lost more than $2,500. Defendant admits that he rented safety deposit boxes in Toledo, Ohio, and Bowling Green, Ohio, to keep money to be used for gambling purposes, and names or describes several gambling places in Ohio and Michigan with which he is familiar. Plaintiff testified that while the parties each had a key to their safe where $8,400 was at one time kept, she found the safe locked and key gone when she filed the bill of complaint in this case and that she secured the services of a locksmith to open the safe and that no money was found in the safe.

Defendant testified that his wife had a loving disposition toward him until the last year before she filed the suit for divorce. He further testified that on Sunday he would wake her up to get his breakfast and she called him an opprobrious name and said, "Make your own breakfast," after he had cooked for himself all the week. He further testified:

"She got into an argument with me all the time. She used obscene language towards me. She broke my bed, and the kitchen chairs. This took place about a year ago, when she moved back into my home, after the divorce proceedings. She did not prepare meals for me for pretty nearly since we have been married. When I married her, she couldn't cook,

and I learned her to cook. I am the cook in my house. I still do the cooking. She kept house with the help of myself. I did the sweeping and cooking, dusting, and repair work. She used to get home at a quarter to 12, and I would see her in the house. One night 3 fellows met her in front of my home, and I made a report to the Fort and Green station. After she was working, and bowling, she used to get home about 2:30, and about a year before the divorce procedure was started, she used to come home at 4 o'clock in the morning. She would tell me it was none of my damned business where she had been. I have seen her in the company of other men. A year ago last summer, right across from the school. I was sitting in the park. That was before the divorce procedure. My wife was staying home with me. When we were separated, I didn't interfere with her. I had seen her in the company of other men before I separated from her on one occasion. One block from my home, right by Western high school. About 3 years ago. She told me it was absolutely none of my business."

While plaintiff was not recalled as a witness after defendant had given the above testimony, still much of the above testimony by defendant was inconsistent with testimony already given by plaintiff in her main case. She had testified that she had to break into the house because she found it locked and impliedly that was a contrary version as to the occasion on which he says she broke the furniture. Her failure to prepare meals was excusable by the fact that she had to work to support the household. Her being with other men in a car near their home, was explained at least inferentially by her testimony that she drove other employees from their employment. She testified that only women bowled at her bowling alleys and that she never gave any man a ride from the bowling alleys; and that defendant knew where she went; that she was treasurer of the bowling league, and bowled once a week. Defendant claims

he took her to the show once a month but does not show that he gave her any other opportunity for diversion.

Plaintiff further testified:

"I never told him I would rather go out alone. I tried to make this marriage a success. I went 100% of the way to make a success of it. * * * There was $8,440 in the safe, and $300 in a canary bird-seed can, up until 1948, and that money was gone. That was money that came from earnings of both of us. All my married life I had to account for my own money, and I never got any money from him to spend. I was told what to do, and how to do it, and when to breathe, with all the humiliation and embarrassment that went with it."

Defendant claimed that the largest amount ever in the safety box in the house was around $4,600.

The trial court in weighing the testimony of the parties, said:

"If it were a simple contradiction between her and him, I would believe her and discredit him. His appearance is distinctly unimpressive. His testimony was given in a shifty, evasive manner which words can not describe. The transcript of the testimony does not truly convey the impression of dishonesty which his words, plus his mannerisms, plus his personality, vividly portray. Add to this unfavorable impression the corroborative testimony of the brother [as to the amount of money counted that was in the safe and seed can], and the result, to my mind, is inevitable."

The trial court found that defendant had taken the $8,400 "in the kitty" as claimed by plaintiff, at about the time of the inception of the divorce proceedings.

We cannot say that we would have come to a different conclusion than that arrived at by the trial court, as to the credibility of the parties.

Defendant complains because the decree awarded practically all the property to plaintiff wife.

The reference in the testimony as to the property of the parties and its value, is casual and the testimony in that particular is in an inconclusive condition. The court seems to have had available, for the purposes of making the decree, information not shown in the record and presumably furnished by the parties for the purposes of entry of decree.

The report of the friend of the court says the agreed valuation of the residence at 4080 Page street, Detroit, jointly owned, is $5,200 or $6,000. The decree assigns this property to the wife, plaintiff, and also, United States savings bonds of the face value of $1,975, are assigned to the wife.

The report of the friend of the court further states other property as follows: A 1939 Plymouth automobile, in the wife's name and possession, but always considered as joint property; also household furniture and furnishings valued by the wife at $1,000 and by the husband at $500; also a vacant lot in Dearborn, Michigan, agreed value $400.

We assume that the trial court intended to assign to the wife the household furniture and furnishings and the decree shall be modified to assign the same to the wife. The vacant lot in Dearborn is not disposed of by the decree and the decree may be amended to assign whatever interest the parties have in the same to the husband. The record does not show how the title to the vacant lot in Dearborn stands.

The decree is silent on the subject of future support of wife. Where there is an absolute decree of divorce with no allowance of alimony nor reservation of the question of alimony, the court cannot make such allowance thereafter. See, *Moross* v. *Moross,* 129 Mich 27; *Kutchai* v. *Kutchai,* 233 Mich

569; *Harner* v. *Harner,* 255 Mich 515; *Mack* v. *Mack,* 283 Mich 365.

It is of considerable value to the husband to be freed from the wife's future support. He had gambled away and hypothecated much of the earnings of the parties.

The conduct of plaintiff was not such as to support defendant's claim of extreme cruelty on her part nor to defeat her cause for divorce. See *Stuart* v. *Stuart,* 311 Mich 30; *Trombley* v. *Trombley,* 313 Mich 80.

The wife is entitled to the decree of divorce on the ground of nonsupport (CL 1948, § 552.8 [Stat Ann § 25.88]) which is certainly to be considered as extreme cruelty on the part of defendant under all the circumstances of this case.

The decree may be modified in accordance with this opinion and as thus modified, is affirmed. No costs, neither party having prevailed in full.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.

The late Chief Justice North did not sit.