KALEAL v KALEAL

1. DIVORCE—JUDGMENT—MODIFICATION—ALIMONY—FRAUD—CONDUCT
   OF PARTIES—EXTRAORDINARY CIRCUMSTANCES.

   Generally, absent fraud, a court may not amend or modify a
   judgment of divorce to provide for alimony where the original
   judgment specifically denies the alimony, but courts must be
   vigilant and able to protect parties who have been improperly
   deprived of alimony by the conduct of the other party, and they
   have the power to vacate a judgment whenever extraordinary
   circumstances make it necessary to achieve justice (GCR 1963,
   528.3[6]).

2. EQUITY—HUSBAND AND WIFE—MISREPRESENTATION—CONCEALMENT
   —SUSPICION OF ARTIFICE—UNDUE INFLUENCE—INDEPENDENT
   COUNSEL.

   Courts of equity will interpose and pronounce a transaction
   between a husband and wife void and as far as possible restore
   the parties to their original rights where there is any misrepre-
   sentation or concealment of material facts, or any just suspi-
   cion of artifice or undue influence; it is a husband's duty to
   advise his wife to seek independent counsel whenever counsel
   would be of real assistance to the wife in deciding whether to
   enter into a transaction with the husband.

3. DIVORCE—JUDGMENT—PARTIAL RELIEF—JUST TERMS—SUBSTANTIAL
   JUSTICE.

   Partial relief from a judgment of divorce may be allowed under
   the court rules where extraordinary circumstances exist, but it
   must be upon such terms as are just and only where necessary
   to further the aims of substantial justice.

4. JUDGMENT—DIVORCE—MODIFICATION—PECULIAR FACTS—LIMITA-
   TION OF APPLICATION—MODIFICATION RULE.

   The Court of Appeals holding that a judgment of divorce contain-
   ing a provision barring alimony could properly be modified to
   provide for alimony is limited to the peculiar and perhaps

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 24 Am Jur 2d, Divorce and Separation § 675 *et seq.*
[2] 24 Am Jur 2d, Divorce and Separation §§ 191, 192.

unique factual situation of this case which made the rule barring modification of divorce judgments to provide for alimony inapplicable.

Appeal from Wayne, Horace W. Gilmore, J. Submitted November 5, 1976, at Detroit. (Docket No. 25792.) Decided January 5, 1977.

Complaint by Frage Kaleal against Adalia Kaleal for divorce. Default judgment for plaintiff. Defendant moved to modify the judgment to provide for alimony. Judgment set aside and then reinstated with an amended alimony provision. Plaintiff appeals. Affirmed.

*Robert J. Adams,* for plaintiff.

Wayne County Neighborhood Legal Services (by *Edwin H. Comber),* for defendant.

Before: R. M. MAHER, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. A default judgment of divorce was granted to plaintiff on August 11, 1972.[1] Incorporated within the judgment, was a provision which provided "that there is no provision for payment of alimony to be paid to the plaintiff husband or defendant wife".

In 1974, defendant filed a motion to modify the previously entered judgment regarding alimony only or, in the alternative, to set aside the entire judgment of divorce. To show entitlement to this relief, the following circumstances, among others, were alleged:

"4. That prior to the entry of a default, your Defend-

---

[1] We note that this divorce terminated a marital relationship of over 30 years.

ant did not file an answer or otherwise defend her rights due to the following conditions and circumstances:

(a) At the time your Defendant was served with the summons and Complaint, she was suffering from severe emotional illness to the extent that she was receiving regular psychiatric treatment, and was unable to properly attend to her affairs.

(b) She did not understand the meaning or significance of the summons and Complaint served upon her.

(c) She was indigent and unable to immediately retain counsel.

(d) The Plaintiff-husband, in violation of the fiduciary duty owed to his ailing wife, repeatedly and falsely assured the Defendant-wife that she need not contest the suit because her rights would not be prejudiced and she would be adequately cared for.

"5. That the above mentioned (4(d)) assurances constituted a fraud upon the Court in that they precipatated (sic) your Defendant's failure to answer and the Court was thereby impliedly led to believe that its defendant did not wish to defend her rights, when, in fact, she did so wish to defend her rights and specifically to raise the issue of alimony.

"6. That were it not for the above enumerated conditions, circumstances and assurances by the plaintiff-husband, your defendant would have answered the complaint prior to the filing of the Default, and would also have raised the issue of her right to alimony."

At the hearing on this motion, the trial judge ruled that the alimony provision of the default judgment of divorce be set aside and then reinstated as an amended alimony provision of $18 per week payable by the plaintiff to the defendant. His opinion from the bench set forth his reasons for his action:

*"The Court:* Well, gentlemen, this is a difficult matter. I think the record made here clearly establishes—I am not prepared to say that there was fraud in this

situation but it clearly establishes a great deal of misunderstanding, a great deal of care on the part of everyone.

"Now, in the first place, there is the situation in which the defendant testified she delivered the summons to the Legal Aid Society and they took no action on it, after she was told they would do so. Then there is, having heard no action on that, the matter of the claim which has not been denied by Mrs. Kaleal that her husband said the only reason that they were going to get a divorce was so that he could bring these relatives over into this country and he was going to marry them and they were going to get back together. That is not denied.

"We have testimony of Mr. Langkam that indicates that first he had some communication with the Legal Aid Service and then had no further correspondence, and they came in and a property settlement was drafted by him for both parties; that Mrs. Kaleal said she was not going to contest it.

"Yet, on the other hand she did not have representation. That, I think, creates problems.

"I think the plaintiff (sic) is entitled to some relief here. I think the whole circumstance as developed in this record gives her a right to relief. The Court was not informed about the proposed reason for the marriage. The Court was not informed about consultation with counsel and then no follow through. The Court was not informed about all of the things that have been made a matter of record here at the time that the judgment was taken.

"So I think there is some basis for the plaintiff to receive some relief under [GCR 1963] 528.3(6); any other reason justifying relief.

"I am most reluctant to set aside the entire judgment, however. The Court must be very practical about such matters. Rule 528 speaks of relief from judgments or order. It can be said that means the only relief is to either set aside the judgment, period. However, there is nothing in the rule that indicates that upon the showing we have here, where this whole group of circumstances, and I am not prepared to say that it amounts

to fraud, but certainly a whole group of circumstances surrounding the whole transaction that the Court was unaware of, would be a reason that would have justified the Court had it known before at the time of taking the default judgment, would have justified the Court in not granting judgment of divorce.

"So, I think that even though it may not come up to fraud,[2] the circumstances are sufficiently serious to give the power, give the Court power to take some action under 528.3(6); any other justifying relief from operation of the judgments.

"I know customarily that 528 is used only for setting aside a judgment. I know of no case that is considered in any way other than that, at least appellate case.

"I don't think the language is so firm that the only choice that I have under 528, when I find reasons under 528.3(6), is to set aside the judgment. I think the rule necessarily implies that if I find reason setting aside relief of judgment I can relieve those portions of the judgment that relief need to be granted from.

"I think, considering all of the facts here, it is a miscarriage of justice not to award alimony to this woman. I am sure if I had been aware of all the facts that I am now I would have.

"I am going to, recognizing all of the Court of Appeals cases cited by Mr. Adams, I still think I have authority under 528.3(6) to relieve from judgment to the extent of alimony.

"I don't think relief from judgment means that I have to set aside the whole judgment or do nothing. So relying upon 528.3(6) I will modify the judgment to award to the defendant alimony, to start as of today." (Footnote added.)

We must reiterate and clarify several salient facts so that the present posture of the instant

---

[2] At the time of this motion, plaintiff was happily married to his cousin. From our review of the record, this appears to have been the reason why the trial judge was reluctant to conclude that a fraud was committed on the court. The trial judge seemed to be of the view that this conclusion would have necessitated the setting aside of the entire original judgment, thus voiding the second marriage.

case is clearly understood. First, particular empha-
sis was placed on the circumstances which caused
defendant to allow the case to proceed *pro con-
fesso.* Accordingly, it is important to note that the
defendant testified that her husband assured her
that the sole reason necessitating divorce was his
parents' desire that he marry his cousin from
overseas, thereby allowing his cousin and her
brothers and sisters to come to this country. For
his efforts, plaintiff's parents offered him $2,000.
Defendant further testified that she was told this
divorce was temporary; upon receipt of the $2,000
plaintiff would remarry defendant. Therefore, de-
fendant was assured, there was no need for her to
protect her rights concerning either specific prop-
erty or alimony. Moreover, she testified that her 2-
1/2 year delay in seeking relief from the earlier
judgment was engendered by her former husband's
repeated assurances that he would return to her
after he collected the $2,000 as remuneration for
the affirmative carrying out of the agreement.
Lastly, we wish to emphasize the fact that the
defendant had been represented by Mr. Langkam,
plaintiff's attorney during the divorce, on a prior
occasion. She wished initially for him to represent
her during the divorce. He refused. However, as
the trial judge noted, he did draft the final prop-
erty settlement for both parties without the de-
fendant being represented by counsel after being
apprised by Legal Services that they were repre-
senting the defendant.[3] We note that all of this
testimony is basically unrefuted.

[3] We think three things important at this juncture. First, this
property settlement provided, in part, that the defendant receive two
houses purchased by the parties on land contract. However, both
houses were heavily encumbered; and it also appears from the record
that they were of dubious market value. Moreover, it appears that the
defendant lacked the requisite financial resources to maintain the
houses. Second, our review of the record tells us that plaintiff's
attorney was not responsible for any of the problems encountered by

On appeal, it is contended by counsel for plaintiff that the actions of the trial judge were improper as a matter of law.[4] This is so, we are told, because of the fundamental rule of law that a court cannot amend or modify a judgment of divorce to provide for alimony, absent fraud, where the original judgment specifically denies the alimony. Since the trial judge specifically withheld determining whether plaintiff had committed fraud concerning the original judgment, plaintiff argues, the judge was not empowered to override the aforestated public policy of this state. Thus, plaintiff concludes, we are left with little choice but to reverse the trial judge's decision.

Defendant retorts that the cases cited by plaintiff are inapposite to the instant factual situation. It is contended that we must draw a delicate line between prior precedent wherein modification was sought with general averments of unsupported misconduct purportedly showing entitlement to relief and this case where relief is sought pursuant to GCR 1963, 528.3(6) for a clearly extraordinary factual situation tantamount to fraud. It is further contended that if we do not affirm the trial court, we will be countenancing highly improper and questionable conduct by allowing an obviously inequitable result to stand. Finally, defendant submits that even if we were to find the court's power to amend the judgment required a finding of fraud

the defendant. Rather, they were occasioned solely by the assurances and conduct of the plaintiff. Finally, we have been unable to discern precisely what type of foul-up caused Legal Aid to not follow up on defendant's request for representation. Present counsel for defendant from Legal Aid, who has vigorously represented her interests, was not with the agency at the time defendant originally sought representation.

[4] The facts, as set forth in the defendant's motion and in the trial judge's opinion, are not challenged by the plaintiff.

and the trial judge's reliance on this section was misplaced, this Court should uphold the alimony provision since ample evidence was presented to support an independent finding of fraud.

At first glance, the language of the legion of cases cited by plaintiff are disarmingly clear that under no circumstances can relief be granted to alter the original no-alimony provision.[5] However, when the policy behind these cases is carefully examined, such is not the case. Each of these cases bespeaks a fundamental concern precluding the relitigation of the alimony issue where a party could have sought and possibly obtained such relief and for whatever reason chose not to do so or was unsuccessful in obtaining this relief. But it does not follow that by using this rule, a party who has taken advantage of the original proceedings, thereby denying his spouse from litigating the alimony issue, obtains the right to completely insulate himself from any action on the part of the court to rectify an obviously intolerable and inequitable situation. Clearly, courts must be vigilant and able to protect parties who have been improperly deprived of alimony by the conduct of one party.

With the foregoing in mind, we must examine the propriety of the method employed by the trial judge to grant relief. GCR 1963, 528.3 provides, in part, as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (6) any other reason justifying relief from the operation of the judgment."

---

[5] A few of these cases are *Ferrera v Ferrera*, 16 Mich App 661; 168 NW2d 475 (1969), *Mack v Mack*, 283 Mich 365; 278 NW 99 (1938), and *Marrobie v Marrobie*, 334 Mich 447; 54 NW2d 623 (1952).

The exact parameters of this rule have never been delineated. Nor can they be. The trial courts must be empowered to draw from their long experience, both with the particular case and from the bench, to determine whether any variables in the case warrant this extraordinary relief. We eschew any standard which would force trial courts to engage in frustrating semantic exercises to bring his particular case, which is crying for relief, within the purview of an inflexibly phrased rule. Consistent with our viewpoint on when the rule should be utilized, is the statement set forth in 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 189:

"(6) *Other reasons for justifying relief.* Subrule 528.3(6) authorizes a motion for relief for 'any other reason justifying relief from the operation of the judgment.' While this broad language was not intended to relieve a party of the necessity for protecting his interest by normally prescribed procedures, it does give the courts ample power to vacate judgments whenever extraordinary circumstances make it necessary to achieve justice. A discussion of circumstances which have led the Federal courts to give relief, under the source provisions of Federal Rule 60(b)(6) is contained in Barron and Holtzoff, Federal Practice and Procedure § 1329. See Selected Federal Decisions, *infra.* In general, relief has been granted under this provision where the judgment was obtained by the improper conduct of the party in whose favor it was rendered, or resulted from the excusable default of the party against whom it was directed, under circumstances not covered by clauses (1) through (5) and where the substantial rights of other parties in the matter in controversy were not affected."

As noted above, the "extraordinary circumstances" test is a well-settled rule in the Federal courts. We think it equally applicable in Michigan. This being so, we must examine the instant case to

determine whether extraordinary circumstances exist herein.

Upon examination of the record, it is obvious that "extraordinary circumstances" exist herein. The factors that dictate this result are innumerable. We agree with the trial court that the lack of counsel occasioned by the husband's conduct is a crucial and perhaps determinative factor. In reaching this conclusion, we refer to the language in *O'Neill v O'Neill,* 65 Mich App 332, 341–342; 237 NW2d 315 (1975), wherein Judge HOLBROOK quoted approvingly from 41 Am Jur 2d, Husband and Wife, §§ 270, 271, pp 223–225, as particularly instructive on the court's duty to prevent overreaching between spouses:

" 'The relationship of husband and wife is generally regarded as of a confidential nature. * * * If there is any misrepresentation or concealment of material facts, or any just suspicion of artifice or undue influence, courts of equity will interpose and pronounce the transaction void and as far as possible restore the parties to their original rights.

\* \* \*

" 'Equity will enforce agreements between the spouses only where they are fair and just and free from fraud, undue influence, duress, and overreaching.

\* \* \*

" 'It is recognized that the most dominant influence of all relations is that of husband over wife, and transactions between them, to be valid, particularly as to her, must be fair and reasonable and voluntarily and understandingly made. Such transactions are jealously scrutinized to prevent the wife from being overreached or defrauded by the undue influence or improper conduct of the husband; and when they are brought about by anything amounting to constructive fraud on his part they are voidable by the wife and are not enforceable against her, at least not in equity.

\* \* \*

" 'Whenever independent counsel would be of real assistance to the wife in deciding whether to enter into a transaction with her husband, it is his duty to advise her to seek such counsel.' "

Having found the granting of relief proper, the question arises whether partial relief from judgment can be given. We think so. The literal language of the rule supports our conclusion. The rule reads in part that relief can be granted "upon such terms as are just". It is therefore readily apparent that this rule did envision flexibility in the power of the court to modify judgments, thereby allowing courts to further the aims of substantial justice. By a niggardly construction of this provision, by holding only total relief can be granted, we would neutralize the entire purpose for which the provision was granted.

Lastly, we wish to add that this case does not supplant the heretofore mentioned "no-modification" rule. Rather, it is a case with a peculiar and perhaps even unique factual context which makes the rule inapplicable. Thus we are not in any way challenging the continuing vitality of the "no-modification" rule. Nor are we presaging an opening of the floodgates whereby a party may now seek alimony where he or she were specifically denied it before. Instead, we again emphasize, we limit our holding to the facts and circumstances contained herein.

Affirmed. Costs to defendant.