ROSE v ROSE

Docket No. 286568. Submitted January 5, 2010, at Grand Rapids.
    Decided June 22, 2010, at 9:15 a.m.

    Rebecca Ann Rose obtained a divorce from Wesley Allen Rose, Sr., in
    the Ottawa Circuit Court, pursuant to a consent judgment entered
    in 2006. At the time of the parties' divorce, their most valuable
    asset was Die Tron, Inc., of which defendant was the sole owner. In
    the consent judgment, the parties agreed that defendant would
    pay plaintiff spousal support in the amount of $230,000 a year for
    20 years and that plaintiff would forgo any interest in Die Tron.
    The judgment stated that the spousal-support obligation was
    nonmodifiable. After the parties' divorce, defendant ceded opera-
    tional responsibility for Die Tron to David Rose, his son from a
    prior marriage. In January 2008, defendant learned that the
    company was failing, and his subsequent efforts to rescue the
    company were unsuccessful. In April 2008, plaintiff moved to
    enforce the judgment's spousal-support provision. Defendant
    countered with a motion to modify his support obligation and for
    relief from the spousal-support provision under MCR 2.612. The
    court, Jon H. Hulsing, J., denied defendant's motion to modify the
    judgment, citing the fact that the divorce judgment was nonmodi-
    fiable by its terms. However, the court granted defendant's motion
    for relief from judgment under MCR 2.612(C)(1)(f) and reduced
    defendant's support obligation to $900 a month. Plaintiff appealed
    by leave granted.

        The Court of Appeals held:

        The statutory right to seek modification of a spousal-support
    provision under MCL 552.28 may be waived by the parties to a
    divorce when the parties specifically forgo that right and agree in
    a consent judgment that the spousal-support provision is nonmodi-
    fiable. MCR 2.612(C)(1) authorizes a court to grant relief from a
    final judgment in certain circumstances. When the parties to a
    consent judgment have chosen to make the judgment nonmodifi-
    able, a court considering granting relief from the judgment under
    MCR 2.612(C)(1)(f), which permits a court to set aside a judgment
    for any reason justifying relief other than those set forth in MCR
    2.612(C)(1)(a) through (e), must strictly apply the factors limiting

relief from a judgment. Specifically, relief may only be granted in extraordinary situations not covered by MCR 2.612(C)(1)(a) through (e), and courts must refrain from vacating the judgment if doing so would detrimentally affect the substantial rights of the opposing party. In this case, the divorce judgment contained a clearly expressed nonmodifiable spousal-support provision. The circuit court erred by failing to afford proper deference to that binding agreement. The circuit court ruled that the spousal-support provision was inequitable and unconscionable given Die Tron's demise. However, by entering a nonmodifiable support provision in the divorce judgment, the parties waived their rights to a judicial determination of equitable spousal support, and the judgment cannot be deemed unconscionable on the basis of events that occurred after the contract's formation. Further, affording defendant relief from the provision would detrimentally affect plaintiff's substantial right to enforcement of the contract. While courts may have the power to set aside a judgment despite prejudice to the opposing party in rare cases, such exceptional circumstances were not present in this case. Die Tron's failure was tragic but hardly extraordinary.

Reversed and remanded.

JUDGMENTS — RELIEF FROM JUDGMENTS — DIVORCE — CONSENT JUDGMENTS — SPOUSAL SUPPORT — NONMODIFIABLE SPOUSAL-SUPPORT PROVISION.

The statutory right to seek modification of a spousal-support provision may be waived by the parties to a divorce when the parties specifically forgo that right and agree in a consent judgment that the spousal-support provision is nonmodifiable; when the parties to a consent judgment have chosen to make the judgment nonmodifiable, a court considering granting relief from the judgment must strictly apply the factors limiting relief from a judgment; the motion may only be granted in extraordinary situations not otherwise specifically enumerated by the court rule, and courts must refrain from vacating the judgment if doing so would detrimentally affect the substantial rights of the opposing party (MCR 2.612[C][1][f]).

*Speaker Law Firm, PLLC* (by *Liisa R. Speaker*), for plaintiff.

*Wheeler Upham, P.C.* (by *Nicholas S. Ayoub*), for defendant.

Before: STEPHENS, P.J., and GLEICHER and M. J. KELLY, JJ.

GLEICHER, J. In this postdivorce dispute over non-modifiable spousal-support language in a divorce judgment, plaintiff, Rebecca Ann Rose, appeals by leave granted a circuit court order relieving defendant, Wesley Allen Rose, Sr., from the judgment and reducing his spousal-support obligation. We reverse and remand for further proceedings.

### I. UNDERLYING FACTS AND PROCEEDINGS

The parties, who wed in 1983, entered into a consent divorce judgment in 2006. During the 22 years of the parties' marriage, they acquired substantial wealth. The couple's most valuable marital asset consisted of stock that defendant owned in Die Tron, Inc., a tool and die company in which defendant partially acquired an interest in 1992. In 2000, defendant purchased the entirety of Die Tron's stock and became the company's sole owner. When the parties divorced, they valued defendant's interest in Die Tron at $6 million.

Defendant wished to avoid liquidating or selling Die Tron in the course of the parties' divorce, in part because he hoped that David Rose, his son from a prior marriage, would eventually buy the business. Instead of converting defendant's Die Tron holdings into cash, the parties agreed that defendant would pay plaintiff spousal support in the amount of $230,000 a year and that plaintiff would forgo any interest in Die Tron. The parties further agreed that plaintiff's spousal support would be nonmodifiable. The divorce judgment, which the parties negotiated with the assistance of counsel, includes the following relevant details concerning modification:

B. The spousal support provided for herein shall be paid directly to or for the benefit of plaintiff by defendant and not through the Office of the Friend of the Court. The parties intend that the spousal support provided for herein shall be all of the spousal support that plaintiff shall receive from defendant. Spousal support payments shall automatically terminate upon plaintiff's death or upon defendant's death.

\*   \*   \*

D. It is the intention and understanding of the parties that the spousal support obligations of the defendant be non-modifiable regarding duration and amount, except:

1) If plaintiff has died, resulting in early termination as provided herein;

(2) If defendant has died, since the parties have provided for the continuation of plaintiff's spousal support through the assignment by defendant to plaintiff of his New England Life Insurance Company Variable Universal Life Policy . . . , a significant part of the life insurance proceeds of which are intended to secure to plaintiff adequate spousal support in the event of defendant's death.

This is the agreement of the parties, and it is the intention of the parties that regardless of any change in circumstances or in the lifestyles of plaintiff or defendant, this spousal support provision is to be non-modifiable.

After entry of the divorce judgment, defendant ceded responsibility for Die Tron's day-to-day operations to David Rose. In January 2008, defendant learned that David Rose had committed financial improprieties that severely compromised Die Tron's ability to remain solvent. Defendant shared this information with plaintiff, who agreed to temporarily modify the spousal-support payment schedule while defendant attempted to rescue Die Tron. Defendant's efforts proved unsuccessful, and Die Tron ceased operation in March 2008. In April 2008, plaintiff moved to enforce the divorce

judgment's spousal-support provision. Defendant countered with a motion to modify his support obligation and for relief from the spousal-support portion of the divorce judgment under MCR 2.612.

The circuit court denied defendant's motion to modify the judgment, finding that the spousal-support term "is non-modifiable and not subject to judicial review." After conducting an evidentiary hearing, the circuit court granted defendant's motion for relief from judgment and reduced his spousal-support obligation to $900 a month. This Court granted plaintiff's application for leave to appeal.

## II. ANALYSIS

Plaintiff contends that because the parties clearly and unambiguously agreed to forgo their statutory right to petition for modification of spousal support, the circuit court abused its discretion by partially relieving defendant of his spousal-support obligation. A divorce judgment entered by agreement of the parties represents a contract. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008). The "interpretation of a contract is a question of law reviewed de novo on appeal . . . ." *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). Likewise, "[t]he proper interpretation and application of a court rule is a question of law, which we review de novo." *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). We review for an abuse of discretion a circuit court's ultimate decision to grant or deny relief from a judgment. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002).

In *Staple v Staple*, 241 Mich App 562, 574; 616 NW2d 219 (2000), a special conflict panel of this Court considered whether parties to a divorce judgment may volun-

tarily relinquish their statutory right to seek modification of a spousal-support agreement "and instead stipulate that their agreement regarding alimony is final, binding, and nonmodifiable[.]" The Court in *Staple* answered this question affirmatively, holding that if divorcing parties negotiate a settlement in which they clearly and unambiguously forgo their statutory right to petition for modification of spousal support, courts must enforce their agreement. *Id.* at 564, 581. In this case, the parties agree that the holding in *Staple* supplies the appropriate analytical starting point.

*Staple* recognized that for some divorcing parties, "the general rule of finality is not always suitable . . . . In many situations, judgments of divorce must anticipate that circumstances will change for both the spouses who require support and the spouses who must provide that support." *Id.* at 565. In the face of changed circumstances, "flexibility in the form of modifiable arrangements may be more important than finality . . . ." *Id.* Recognizing the need for flexibility in this realm, our Legislature enacted MCL 552.28, which grants circuit courts the authority to modify the spousal-support award contained in a divorce judgment.[1]

This Court explained in *Staple*, 241 Mich App at 574-575, that the plain language of MCL 552.28 does not preclude a party from waiving his or her right to seek modification of a spousal-support award and that Michigan courts often enforce agreements to waive

---

[1] In MCL 552.28, the Legislature set forth that

[o]n petition of either party, after a judgment for alimony or other allowance for either party or a child . . . and subject to [MCL 552.17], the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, . . . and may make any judgment respecting any of the matters that the court might have made in the original action.

statutory rights. The Court observed that, "[m]ore importantly," longstanding caselaw holds that when both parties waive their rights to seek spousal support altogether, "neither party has the right to petition the court" to modify that agreement by adding a provision for spousal support when none previously existed. *Id.* at 575. In light of these legal principles, we concluded in *Staple* that "the statutory right to seek modification of alimony may be waived by the parties where they specifically forgo their statutory right to petition the court for modification and agree that the alimony provision is final, binding, and nonmodifiable." *Id.* at 578.

After announcing this holding, the Court in *Staple* approvingly acknowledged the following "five public policy reasons why courts should enforce duly executed nonmodifiable alimony arrangements":

> (1) Nonmodifiable agreements enable parties to structure package settlements, in which alimony, asset divisions, attorney fees, postsecondary tuition for children, and related matters are all coordinated in a single, mutually acceptable agreement; (2) finality of divorce provisions allows predictability for parties planning their postdivorce lives; (3) finality fosters judicial economy; (4) finality and predictability lower the cost of divorce for both parties; (5) enforcing agreed-upon provisions for alimony will encourage increased compliance with agreements by parties who know that their agreements can and will be enforced by the court. [*Id.* at 579.]

The Court further emphasized that its decision "also advance[d] the public policy of requiring individuals to honor their agreements." *Id.* at 579-580.

The circuit court determined that the instant judgment's nonmodifiable spousal-support language fully complied with the requirements this Court identified in *Staple*. The circuit court then considered whether, de-

spite the parties' covenant not to seek any modification of spousal support, defendant had established a ground for relief from the judgment under MCR 2.612(C). MCR 2.612(C)(1) authorizes a court to relieve a party from a final judgment on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

A motion for relief from judgment under subrules (a), (b), or (c) must be made within one year after the judgment. MCR 2.612(C)(2).

The circuit court noted that "[a]t first glance" defendant's request for relief appeared unsupportable under MCR 2.612(C)(1)(a) through (e), "[b]ut, on deeper analysis, it does appear that there are some elements of MCR [2.612(C)(1)(a)] and (b) at issue." The court continued that "while a downturn in business was contemplated, it was not contemplated by any of the parties that a family member would falsify financial records that were relied upon by Defendant and third parties" or that the business "would be involuntarily closed." According to the circuit court, these circumstances "contain an element of surprise." The circuit court further found that any "neglect" of the business

by defendant was "excusable" because defendant had entrusted the business operations to his son. The court detected no "undiscovered evidence" that existed at the time the parties entered into the divorce judgment, but added that David Rose began altering the books "within months" thereafter. (Citation omitted.) The circuit court finally found that "within twenty months after the Judgment of Divorce was entered, the value of the company was reduced to scrap value, after debts were paid. As such, it appears that a significant mistake may have been made in the valuation of the Company."

Although the circuit court discovered some evidence supporting "elements of MCR 2.612(C)(1)(a) and (b)," the court recognized that because defendant filed his motion more than a year after entry of the judgment, those subrules did not apply. The circuit court then considered whether defendant had demonstrated grounds for relief under MCR 2.612(C)(1)(f), which permits a court to set aside a judgment for any reason justifying relief other than those listed in MCR 2.612(C)(1)(a) through (e).

This Court first considered the "exact parameters" of subrule (f) in *Kaleal v Kaleal*, 73 Mich App 181, 189; 250 NW2d 799 (1977), and adopted an approach to the subrule's use consistent with federal precedent.[2] The Court explained that federal courts generally grant relief under this provision " 'where the judgment was obtained by the improper conduct of the party in whose favor it was rendered, or resulted from the excusable default of the party against whom it was directed, under circumstances not covered' " by the other clauses permitting relief from a judgment " 'and where the substantial rights of other parties in the matter in contro-

---

[2] *Kaleal* construed GCR 1963, 528.3(6). The language of MCR 2.612(C)(1)(f) mirrors that of former GCR 1963, 528.3(6).

versy were not affected.' " *Id.* at 189, quoting 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 189. In *Lark v Detroit Edison Co*, 99 Mich App 280, 284; 297 NW2d 653 (1980), this Court set forth a three-part test for ascertaining whether the "extraordinary relief" envisioned in the predecessor of MCR 2.612(C)(1)(f) is warranted:

> (I) [T]he reason for setting aside the judgment must not fall under subrules (1) through (5) [now subrules (a) through (e)], (II) the substantial rights of the opposing party must not be detrimentally affected if the [judgment] is set aside, and (III) extraordinary circumstances must exist which mandate setting aside the judgment in order to achieve justice.

And in *McNeil v Caro Community Hosp*, 167 Mich App 492, 497; 423 NW2d 241 (1988), we specifically reiterated that generally "relief is to be granted only where the judgment was obtained by the improper conduct of the party in whose favor it was rendered."

In *Heugel v Heugel*, 237 Mich App 471; 603 NW2d 121 (1999), this Court affirmed a circuit court's invocation of MCR 2.612(C)(1)(f) in setting aside the property division and spousal-support terms of a divorce judgment. In *Heugel*, the parties stipulated to the entry of a divorce judgment after a 14-year marriage that had produced one child. *Id.* at 473. The judgment awarded the wife a property settlement primarily consisting of a lump-sum payment of $50,000, and she received no other spousal support. *Id.* at 473-474. The wife suffered from "severe health problems" and claimed that she had agreed to the property settlement because her husband deceived her into believing that the couple would remain together after the divorce. *Id.* at 475-477. The circuit court set aside as "unconscionable" the judgment's property and spousal-support provisions,

concluding that the husband's fraud tolled the one-year time limit set forth in MCR 2.612(C)(2). The circuit court also invoked MCR 2.612(C)(1)(f). *Id.* at 477.

This Court affirmed the circuit court's reliance on subrule (f), reasoning that, like its federal counterpart, FR Civ P 60(b)(6), MCR 2.612(C)(1)(f)

> provides the court with a grand reservoir of equitable power to do justice in a particular case and vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice. . . . [W]e believe that a trial court may properly grant relief from a judgment under MCR 2.612(C)(1)(f), even where one or more of the bases for setting aside a judgment under subsections a through e are present, when additional factors exist that persuade the court that injustice will result if the judgment is allowed to stand. [*Id.* at 480-481 (quotation marks and citation omitted).]

The Court in *Heugel* identified as "additional factor[s]" supporting relief from the judgment the husband's " 'abuse[] [of] the unique nature of the husband-wife relationship,' " leading the wife "to believe that the entry of the divorce judgment was an irrelevant formality," and the wife's physical condition, which prevented her from working. *Id.* at 481 (citation omitted). This Court concluded that under the circumstances, relief from the judgment under subrule (f) "is therefore proper because the judgment was obtained by [the husband's] improper conduct." *Id.* The Court further observed that "plaintiff's substantial rights are not detrimentally affected" by relieving him from the judgment "because he is not permitted to enforce an unconscionable agreement." *Id.* at 482.

Using *Heugel* as an analytical framework, the circuit court in the instant case found that extraordinary circumstances existed to justify relieving defendant from the divorce judgment's nonmodifiable spousal-

support language. The circuit court identified the extraordinary circumstances on which it relied:

- The business that provided a substantial income to both parties no longer exists.

- Defendant is not responsible for the loss of the business. Defendant was presented with false financial documents prepared by the Company's president. When Defendant was made aware of the Company's dire financial predicament, Defendant immediately took action to attempt to salvage the business. This included meeting with bankers, divesting an asset and reconfiguring rental agreements.

- Plaintiff was and is aware that Defendant's ability to pay spousal support rested on the continued viability of the Company. In fact, the checks for spousal support were written by Die Tron. Defendant timely informed Plaintiff of Die Tron's financial instability. Plaintiff acknowledged in the January, 2008 modification to the non-modifiable spousal support provision of the Judgment that Defendant "will be unable to make the required payments for a period of time."

- Defendant is no longer able to pay spousal support of $230,000 per year, since he is now earning $52,000 per year.

- Defendant's only ability to pay the ordered amount of spousal support is through the liquidation of his assets. Defendant's assets amount to approximately $500,000 out of which $79,000 is due and owing for spousal support as noted above. Defendant also has $300,000 in a 401K plan. The complete liquidation of Defendant's estate will only satisfy approximately three years of his spousal support obligations. After the exhaustion of Defendant's estate, he will still owe spousal support for an additional 15 years, which is 75% of the obligation.

- The above shows that it is impossible for Defendant to comply with the spousal support provisions contained in the Judgment of Divorce.

- Plaintiff has spent $870,718.19 since August, 2006. Plaintiff has liquidated much of the cash value of a $6

million life insurance policy that was designed to provide her with continued spousal support in the event of Defendant's death. Defendant is not responsible for Plaintiff's choices in spending or business investments. Plaintiff has, through unwise investments, nearly destroyed her estate. Plaintiff would require that this Court allow the complete destruction of Defendant's estate to pay Plaintiff's post marital debt.

• In March, 2008 Plaintiff filed a motion to modify the non-modifiable spousal support agreement.

The circuit court explained that plaintiff's substantial rights were not "detrimentally affected" by reducing defendant's spousal-support obligation:

Plaintiff would have this Court determine that it is Plaintiff's reliance on receiving $230,000 in spousal support that must be analyzed. The Court disagrees. Spousal support is equitable in nature. Plaintiff is only entitled to an equitable amount of spousal support. *Heugal* [sic] is in accord when it stated: "We cannot find that plaintiff's substantial rights are detrimentally affected because he is not permitted to enforce an unconscionable agreement." *Id.*, at 482.

Likewise, Plaintiff argues that in lieu of 50% of Die Tron, she received the spousal support provision. As mentioned, the appraisal value of Die Tron was not admitted into evidence. But, the Court notes that upon liquidation of the Company, Defendant received $150,000 of which one-half went to pay debts associated with the Company. Obviously, Die Tron was worth only scrap value. To claim $230,000 a year for an additional 18 years to compensate Plaintiff for 50% of a Company that is worth only scrap value is not equitable.

The circuit court concluded that although relief from a judgment under MCR 2.612(C)(1)(f) is generally granted only " 'when the judgment was obtained by the improper conduct of the party in whose favor it was rendered' . . . , in domestic relations actions, the court must equitably divide the marital estate and set, if

applicable, an equitable amount of support." (Citation omitted.) In light of the goal to equitably apportion the marital estate, the circuit court opined that "this case is an exception to the general rule," reasoning that "nothing in MCR 2.612(C)(1) limits the rule's application to misconduct of a party." After relieving defendant from his obligation to pay $230,000 in annual spousal support, the circuit court applied the factors analyzed in *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992), and ruled that defendant must pay plaintiff spousal support of $900 a month.

Well-settled policy considerations favoring finality of judgments circumscribe relief under MCR 2.612(C)(1). See *Wayne Creamery v Suyak*, 10 Mich App 41, 51; 158 NW2d 825 (1968). The first five grounds for vacating a judgment, subrules (a) through (e), delineate narrow, time-critical pathways for relief. Subrule (f) indisputably widens the potential avenues for granting relief from a judgment. But the competing concerns of finality and fairness counsel a cautious, balanced approach to subrule (f), lest the scale tip too far in either direction. Thus, while permitting relief under this subrule for "any other reason" justifying it, our courts have long required the presence of both extraordinary circumstances and a demonstration that setting aside the judgment will not detrimentally affect the substantial rights of the opposing party. Cautious application of MCR 2.612(C)(1) in divorce cases also advances the policy considerations described in *Staple*, 241 Mich App at 579-580.

It is equally well settled that contracts must be enforced as written: "[W]hen parties have freely established their mutual rights and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions con-

tained in such contracts, if the contract is not contrary to public policy." *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 213; 737 NW2d 670 (2007) (quotation marks and citation omitted). The parties in this case negotiated a divorce judgment containing unambiguous spousal-support terminology prohibiting future modifications "regardless of any change in circumstances or in the lifestyles of plaintiff or defendant . . . ." "A long line of case-law reflects that divorcing parties may create enforceable contracts." *Holmes*, 281 Mich App at 595. When plaintiff and defendant included the clear and unambiguous language in their divorce judgment making spousal support nonmodifiable, both had representation by counsel and presumably understood that, absent this language, the circuit court possessed the authority to revise spousal support if circumstances changed. Instead of opting for flexibility, the parties struck a bargain favoring finality, benefiting both. Defendant maintained full ownership of his business and the ability to transfer its ownership to his son; plaintiff obtained equitable and certain support. In striking their deal, both parties deliberately risked that future circumstances would render their contract inequitable.

Given the judgment's clearly expressed, enforceable, and nonmodifiable spousal-support wording, we conclude that the circuit court erred by failing to afford proper deference to the parties' binding agreement. When the parties have expressly elected finality in lieu of flexibility, a court considering relief under MCR 2.612(C)(1)(f) must strictly apply the factors limiting relief from a judgment set forth in *Kaleal*, 73 Mich App at 189, and subsequent cases. Those factors confine the application of subrule (f) to extraordinary situations not covered by subrules (a) through (e) and mandate that a

court refrain from vacating a judgment if doing so detrimentally affects the rights of the opposing party.

In this case the circuit court reasoned that because spousal support is "equitable in nature," plaintiff "is only entitled to an equitable amount of spousal support." Die Tron's demise, in the circuit court's estimation, rendered "unconscionable" plaintiff's enforcement of the spousal-support agreement and, consequently, did not detrimentally affect her substantial rights. We reject this analysis for the simple reason that by entering into a divorce judgment with a nonmodifiable support provision, the parties conclusively waived their rights to a judicial determination of equitable spousal support. The circuit court's invocation of its equitable authority to modify spousal support pursuant to MCL 552.28 ignores and invalidates the parties' election to forgo flexibility and their explicit waiver of the right to seek support modifications based on equitable considerations. Rather, the parties' carefully crafted compromise reflects their willingness to accept that changed circumstances might render this election unfair to one or the other.

In *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005), our Supreme Court underscored the importance of the right to contract, emphasizing that "the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." In this case the parties agreed to be bound by the judgment, not a circuit court's notion of fairness. Indisputably, affording defendant relief from this freely negotiated, nonmodifiable

judgment would detrimentally affect plaintiff's substantial right to enforcement of the contract. Accordingly, the circuit court erred by failing to consider plaintiff's substantial right to enforcement of the parties' agreement, and in so doing neglected "to honor the parties' clearly expressed intention to forgo the right to seek modification . . . ." *Staple*, 241 Mich App at 568. Because the circuit court incorrectly concluded that setting aside the plain terms of the parties' consent judgment with respect to spousal support would not detrimentally affect plaintiff's substantial rights, the circuit court abused its discretion by granting defendant's motion to set aside the judgment under MCR 2.612(C)(1)(f).

Moreover, we reject that *Heugel* operates as controlling authority in this case. Unlike in *Heugel*, the evidence here does not suggest that the spousal-support provision qualified as "unconscionable" when the parties negotiated it. We know of no authority permitting a court to find a contract unconscionable on the basis of events that occurred long after the contract's formation.[3] Furthermore, the parties' divorce judgment in *Heugel* apparently did not incorporate a nonmodification clause. Consequently, in that case the circuit court's discretion to favor fairness when it construed MCR 2.612(C)(1)(f) remained unconstrained by competing considerations of finality and freedom of contract.

Although we conclude that vacation of the spousal-support term detrimentally affected plaintiff's substantial rights in this case, we recognize that in rare cases, a circuit court's "grand reservoir of equitable power to

---

[3] "The determination of whether a given clause or contract is in fact unconscionable is to be made at the time of its making rather than at some subsequent point in time (e.g., at the time for performance) . . . ." 8 Williston, Contracts (4th ed), § 18:12, p 127.

do justice" may necessitate setting aside a judgment despite prejudice to the opposing party. *Heugel*, 237 Mich App at 481 (quotation marks and citation omitted). However, the record in this case does not support the existence of truly exceptional circumstances. The caselaw construing MCR 2.612(C)(1)(f) contemplates that extraordinary circumstances warranting relief from a judgment generally arise when the judgment was obtained by the improper conduct of a party. *Heugel*, 273 Mich App at 479; see also *Altman v Nelson*, 197 Mich App 467, 478; 495 NW2d 826 (1992). No such misconduct occurred in this case. Moreover, the events giving rise to Die Tron's failure qualify as tragic, but hardly extraordinary. As a seasoned business owner, defendant undoubtedly understood that an economic downturn or financial mismanagement could endanger the solvency of his company. He nevertheless agreed that plaintiff could receive nonmodifiable spousal support. We feel hard-pressed to conclude that a business failure amounts to a circumstance so unexpected and unusual that it may constitute a ground for setting aside a final, binding, and nonmodifiable spousal-support provision. "When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *United States v Bank of New York*, 14 F3d 756, 759 (CA 2, 1994). The extraordinary circumstances cited by the circuit court simply do not overcome the detrimental effect on plaintiff's substantial rights that would result from setting aside the judgment.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.