*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOWNSHIP OF CENTERVILLE,

Plaintiff-Appellee,

v

BRIAN C. ROGERS, CHERYL A. ROGERS
TRUST, and MUSHROOMS OF LEELANAU,
LLC,

Defendants-Appellants.

UNPUBLISHED
January 14, 2025
9:05 AM

No. 368641
Leelanau Circuit Court
LC No. 2022-010791-CZ

Before: N. P. HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

In this case, plaintiff brought claims against defendants for violations of the Centerville Township Zoning Ordinance (the "ZO"). The trial court granted plaintiff's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), and issued an order giving defendants six months to abate a nuisance. After those six months had passed, defendants moved for relief from judgment as to that order, which the trial court denied. Defendants appeal by right. We affirm.

## I. FACTS

Brian C. Rogers ("Rogers") and the Cheryl A. Rogers Trust ("the Trust") co-own real property in Centerville. Mushrooms of Leelanau, LLC ("the LLC") is a business managed by Rogers, along with a business partner. This case involves defendants' endeavor to prepare the subject property for operation of a mushroom-growing operation.

In October 2017, plaintiff issued Rogers a land-use permit for the envisioned construction on the property. In April 2019, plaintiff determined that the property violated multiple sections of the ZO, by having

-1-

an incomplete fence with gaps and height violations, an unlicensed delivery truck stored on the property, construction material located along the roadway, the unfinished exterior of the connected storage trailers, non compliance with the Building Safety Department standards for storage trailers, and inadequate proof that Rogers was operating a business of commercial mushroom production on site.

A zoning administrator sent a letter to defendants detailing the violations, and declaring June 1, 2019, as the date by which the property must be brought into compliance.

According to the zoning administrator, as of June 2019 "there had been a lot of progress towards compliance," but the violations had still "not been completely corrected." The deadline was extended to August 2019, then to November 2019. In November 2019, violations persisted, and plaintiff imposed a civil-infraction ticket of $100 per month pending resolution of the violations. Defendants paid these tickets for eight months, but made no further payments after June 2020. Plaintiff commenced this action in February 2022. Plaintiff asserted that the permit violations on the property constituted a nuisance per se, and requested an injunction ordering defendants to stop violating the ZO and abate the alleged nuisance. In March 2022, defendants retained an attorney to represent them.

On July 21, 2022, Lapham Associates, an engineering, planning and environmental surveying company retained by plaintiff's attorney, inspected the conditions on the subject property and found a number of violations. The Lapham report detailed that the "Foundations," "Foundation Design and Attachment," "Materials," "Stairways," "Aisleways," "Treated Lumber," and "Grading" were all substandard by Michigan Building Code standards, and concluded that the conditions "may be deficient in ways that could lead to failure of the building either in the short term or long term," possibly leading to "catastrophic failure and . . . injury or loss of life, or significant damage to property."

In the trial court, Rogers decided that he no longer wanted an attorney to represent defendants, and their attorney was allowed to withdraw as counsel. Rogers stated that he preferred to directly deal with plaintiff. The trial court ordered a mediation session between the parties, and plaintiff and Rogers appeared for such a session on November 1, 2022, but it did not proceed because Rogers failed to pay the deposit to the mediator. On December 23, 2022, plaintiff moved for summary disposition, and a hearing on the motion was scheduled for January 23, 2023. On January 20, 2023, Rogers e-mailed the trial court and plaintiff, informing them that he had been attempting to obtain legal representation, but had not yet succeeded.

Rogers was the only individual who appeared at the hearing representing defendants' interests. Rogers explained that he started searching for legal representation "a couple months ago," and had spoken "to over a dozen lawyers, but I haven't gotten any commitments yet." Rogers stated that he did not wish to "move forward under these circumstances without representation." But he also stated that it was "a good thing that we're all meeting together; and I would like to hear . . . what you all have . . . as a resolution," and added that he was "willing to represent myself as much as I can today." Rogers conceded that he did not "have everything in order at this point," but stated that he was trying "to move the case forward into a rehabilitation state and remediated state."

Plaintiff's attorney stated that too much time waiting on Rogers had passed, and that there were "no facts in dispute at this point," and "no compliance with scheduling order, or discovery demands." Plaintiff's attorney requested judgment by way of summary disposition and default. Rogers acknowledged that he had missed previous deadlines, and had not finished the structures he was building. He attributed his delays to his having to attend to his son's medical issues. Rogers requested "another chance" to remedy the property.

The trial court granted plaintiff's motion for summary disposition, and stated that it would give Rogers six months from the entry of the order granting summary disposition to remedy the property. Rogers stated, "I agree," and added, "I'm happy with six months," and "it's not too much. We're going to do that. We can do that now. Thank you, and I appreciate that."

Plaintiff's attorney sent a proposed order granting summary disposition to the trial court, along with a cover letter stating that plaintiff had "conferred with . . . Rogers regarding the terms of a proposed order," and that "Mr. Rogers has expressed to us that he does not agree with the language in our proposed order, but did not provide any alternative language." On February 24, 2023, the trial court signed the order, which set a deadline of August 24, 2023. Defendants were to satisfy the ZO by completing construction and properly joining the mushroom-growing structures, and by removing or properly enclosing "all unlicensed junk and construction materials." If the property was not in full compliance by the deadline, plaintiff would "have the right to enter the Property to demolish the mushroom growing structures, to clear the structures from the Property, and to remove any and all remaining unlicensed junk and construction materials from the Property, at Defendants' expense."

Defendants failed to complete construction or remove the junk materials by the deadline. On September 28, 2023, a new attorney appeared on behalf of defendants. That day, the attorney moved for relief from judgment, requesting relief from the order, a temporary restraining order, and a preliminary injunction preventing plaintiff or its agents from removing or interfering with any materials, or even entering the property. On October 5, 2023, the trial court denied defendants' requests. Defendants moved for reconsideration, which was also denied. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision to grant or deny a motion for relief from judgment for an abuse of discretion. *Adler v Dormio*, 309 Mich App 702, 707; 872 NW2d 721 (2015). Likewise, we review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Kokx v Bylenga*, 241 Mich App 655, 658-659; 617 NW2d 368 (2000). "A trial court has not abused its discretion if its decision results in an outcome within the range of principled outcomes." *Adler*, 309 Mich App at 707. "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). We review de novo the trial court's interpretation and application of court rules. *Adler*, 309 Mich App at 707.

III. ANALYSIS

Defendants argue that they presented extraordinary circumstances that justified setting the judgment aside, and that the trial court abused its discretion by concluding otherwise. We disagree.

MCR 2.612(C) sets forth the grounds upon which a motion for relief from judgment may properly be based. "Well-settled policy considerations favoring finality of judgments circumscribe relief under MCR 2.612(C)(1)." *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010). MCR 2.612(C)(1)(a) to (e) describe "narrow, time-critical pathways" for relief from judgment. *Id*. Additionally, MCR 2.612(C)(1)(f) authorizes a trial court to relieve a party for "[a]ny other reason justifying relief from the operation of the judgment." On appeal, defendants argue that the trial court abused its discretion by concluding that they were not entitled to relief under MCR 2.612(C)(1)(f). To show entitlement for relief under MCR 2.612(C)(1)(f), the following must be established:

> (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. Generally, relief is granted under subsection f only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. [*Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999).]

When a litigant creates that litigant's "own predicament," relief is not warranted. *Limbach v Oakland Co Bd of Co Rd Commr's*, 226 Mich App 389, 393; 573 NW2d 336 (1997). This is especially so when the litigant's "counsel's tactical error prejudiced [his or] her rights." *Id*.

For purposes of this appeal, we accept the parties' contention that defendants were not entitled to relief under MCR 2.612(C)(1)(a) through (e). We conclude that defendants have not established the remaining *Heugel* requirements. As a result, we conclude that the trial court did not abuse its discretion when it denied defendants' motion for relief from judgment.

A. EXTRAORDINARY CIRCUMSTANCES

Defendants argue that they did demonstrate extraordinary circumstances warranting relief, emphasizing the important property interest at stake, and how the issue of legal representation was handled as related to plaintiff's motion for summary disposition.

Defendants first assert that Rogers represented not only himself, but also the Trust and the LLC at the summary-disposition hearing. Defendants characterize this as the unauthorized practice of law, on the grounds that, although it was permissible for Rogers to represent himself as an individual defendant, only a licensed attorney should have been permitted to represent the other two entities. See MCL 600.916(1); *Dressel v Ameribank*, 468 Mich 557, 569, 664 NW2d 151 (2003) (holding that "a person engages in the practice of law when he counsels or assists another in matters that require the use of legal discretion and profound legal knowledge"). In fact, defendants argue that the Trust and LLC should have been treated as failing to answer or otherwise appear in response to the motion for summary disposition, and should have had a default issued against them.

Because the Trust and LLC were fully informed of the upcoming summary-disposition motion and hearing but decided neither to answer nor to involve legal representation, a default could have been a way for the trial court and plaintiff to proceed in connection with those defendants. See MCR 2.603(A)(1). Instead, the court allowed all defendants six more months to work at remedying the property. The trial court arguably should have clarified that only Rogers lost on the summary-disposition motion on its merits, and that the Trust and LLC were simply defaulted. But any such mistake actually benefited the Trust and LLC. It is therefore not a valid basis for allowing those defendants to go back and attempt to improve their position.

Substantively, the lack of differentiation between defendants was of little consequence: defendants do not assert that there was ever any difference or disagreement among them regarding their respective interests. All defendants were aligned in the simple and singular objective of wanting more time to remedy the subject property conditions. The lack of differentiation was also natural, given that the parties were closely related. The LLC was small and Rogers was its most prominent figure, and the Trust benefited Rogers' mother, who appeared to have left most attendant dealings to Rogers. Either Rogers alone, or an attorney representing all three defendants, has spoken for all three defendants throughout this case. Ultimately, defendants did not care to flag any distinctions between them in the lower court proceedings.

Defendants also complain that Rogers represented himself at the summary-disposition hearing, instead of being represented by an attorney, arguing that this proceeding was quasi-criminal in nature and that Rogers did not understand the importance of the hearing. At the beginning of the hearing, Rogers did request more time to find an attorney. Defendants argue that Rogers should have been granted his request for a delay of the hearing so that he could secure an attorney.

"This Court has long recognized that prosecutions for violations of ordinances are in a sense criminal, but that such violations are not criminal cases within the meaning of the statutes and rules for review by this Court." *Huron Twp v City Disposal Sys, Inc*, 448 Mich 362, 365; 531 NW2d 153 (1995). In *Long Lake Twp v Maxon*, 343 Mich App 319, 335; 997 NW2d 250 (2022), aff'd ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 164948), this Court described why the case before it did not warrant application of the criminal exclusionary rule:

> This is a civil case. The township seeks a declaratory judgment and to abate a nuisance. There are no police officers involved. Rather, the township enforces its zoning ordinances through the work of inspectors and zoning enforcement officers. The penalty that might be exacted for maintenance of a nuisance is a civil fine, but the township has sought no fine. Even if the township wanted to impose a fine, MCL 117.4q describes the fine as "civil." . . . The unlikelihood of any penalty being exacted, and the fact that this zoning action is not coupled with a criminal prosecution of any sort, removes it from the realm of "quasi-criminal" matters.

Defendants argue that the analysis of Rogers acting as counsel should apply the standards applicable for a criminal defendant. See *People v Williams*, 470 Mich 634, 642; 683 NW2d 597 (2004) (stating the findings a trial court must make before granting a criminal defendant's waiver

-5-

of counsel). We are not persuaded. Our Supreme Court has stated that actions to redress ordinance violations "are not criminal cases within the meaning of the statutes and rules for review by this Court." *Huron Twp*, 448 Mich at 365. This case has involved no threat of incarceration. The only penalties imposed on defendants have been monetary civil-infraction tickets. Plaintiff's focus has not been on these tickets, but instead on working with defendants to bring the property into ordinance compliance. The summary-disposition order plaintiff obtained described how the property needed to be brought into compliance, and how long defendants would have to do this. Its description of possible monetary consequences for defendants pertained only to recouping expenses if defendants failed to abide and it became necessary for plaintiff to undertake remediation of the ordinance violations. Defendants cite no controlling authority that holds that this situation required analyzing Rogers' right to representation at the enhanced level that would be called for in a criminal context. The situation presented appears similar to that of *Long Lake Twp*, 343 Mich App at 335, and, as in that case, such heightened consideration should not be undertaken.

Because the summary-disposition hearing was not criminal or quasi-criminal in nature, Rogers' right to legal representation consisted of being permitted to proceed through retained counsel. Unlike in the criminal context, Rogers' appearing without an attorney did not require an analysis into whether he was deciding to self-represent, or understood the risks of doing so. Defendants correctly note that Rogers expressed that he would prefer that the hearing be delayed until he engaged an attorney. But the trial court was not the entity preventing an attorney from appearing, and did not rush matters in a way that unfairly denied Rogers the chance to find counsel.

Defendants were notified of their violations in April 2019, and retained an attorney in March 2022. This shows that they did understand and view the proceeding as one sufficiently important to warrant legal representation even before plaintiff initiated the motion for summary disposition. Rogers stated that he decided to discharge retained counsel in August 2022 because he wished to deal directly with plaintiff. On December 23, 2022, plaintiff moved for summary disposition, and a hearing on the motion was held on January 23, 2023. At the hearing, Rogers fully recognized that the proceeding was a "crucial" one, and his stated objective was to be given "another chance" to remedy the property. The trial court granted plaintiff's motion for summary disposition, and Rogers appeared to be receptive to, and even in agreement with, the six-month timetable set forth. He later apparently disagreed with plaintiff's proposed language implementing this directive, but did not offer an alternative. It was not until the six months had passed, and the violations had still not been remedied, that Rogers raised these grievances over how the summary-disposition hearing had been conducted.

Defendants attempt to put forth a picture of Rogers as unfairly denied the time to obtain an attorney, and not understanding the importance of the summary-disposition hearing. The record, however, paints a picture of plaintiff giving defendants years to remedy their property. Rogers hired an attorney during this period, but then decided that he preferred to deal with plaintiff more directly, and fired his attorney. Rogers' own conduct left him in a position of self-representation at a civil hearing, the disposition of which he appeared to find palatable. See *Limbach*, 226 Mich App at 393. He did not express discontent with that disposition until after he had failed to comply by the new deadline. The trial court did not err by proceeding with the hearing while Rogers was self-represented, and a different result likely would not have resulted even if the trial court had delayed matters until Rogers engaged a new attorney.

Defendants focus on the 31 days between the filing of the motion for summary disposition and the hearing on the motion, asserting that this is the only relevant period to consider, and that it was an unfairly short one for defendants to find an attorney. First, defendants cite no authority that states that a civil litigant must be given more than that amount of time to find an attorney. We note, however, that MCR 2.116(B)(2) allows a summary-disposition hearing to be held 28 days after a summary-disposition motion is served on the opposing party, without regard for whether the served party has, or might yet need, representation. Second, although the motion for summary disposition was not filed until December 23, 2022, that does not mean that this was the first date upon which defendants were fairly on notice of the need to obtain representation. Defendants had been on notice that they were in violation since April 2019, and their noncompliance resulted in monetary tickets starting in November 2019. In February 2022, plaintiff filed a complaint for the injunctive relief defendants now seek to avoid. Soon after that, defendants did decide to hire counsel, before later deciding to fire him. Thirty-one days is therefore an understatement of the amount of time involved.

Third, the length of time leading up to the summary-disposition motion, the persisting violations, Rogers' goals at the time of the hearing, and the amount of time before a new attorney for defendants did appear, indicate that an adjournment would have made no difference in the decision on the merits, and if anything would have only further delayed matters. On appeal, defendants argue they should have been granted a 30-day adjournment. That number was not proposed at the hearing, and Rogers' description of his unsuccessful efforts to find an attorney for "a couple months" would seem to indicate that that would not have been enough time. In fact, a new attorney did not appear for defendants until September 28, 2023. Defendants' focus on 31 days as so brief a period as to compel an adjournment is unconvincing.

Finally, defendants argue that important property rights were at issue, and that they were entitled to due process before plaintiff or the trial court could properly intrude on those rights. Both of these statements are generally true. See US Const Am XIV; Const 1963, art 1, § 17. But defendants do not appear to be able, either for financial or workforce reasons, to bring their property into compliance, no matter how much time plaintiff has allowed them. Plaintiff has treated defendants' rights as important, and has given defendants well more than minimal time to remedy the situation before resorting to litigation. The ordinance violations were neither obscure nor trivial. There have been persistent violations that risked even "loss of life."

For these reasons, we conclude that the trial court did not err by declining to recognize any extraordinary circumstances warranting relief from judgment. See *Heugel*, 237 Mich App at 478-479. Therefore, the trial court properly denied defendants' requests for relief from the order, a temporary restraining order, and a preliminary injunction.

## B. PLAINTIFF'S SUBSTANTIAL RIGHTS

Defendants argue that the substantial rights of plaintiff would not be detrimentally affected by setting the judgment aside, and that the trial court abused its discretion by not so concluding. We disagree.

"Lawful uses of land may be prohibited in certain areas by zoning or building ordinances, if such exercise of police power bears a real and substantial relationship to public health, safety, morals or the general welfare." *Gust v Canton Twp*, 342 Mich 436, 438; 70 NW2d 772 (1955). "[A]esthetic concerns" are "a legitimate governmental interest" that may underlie municipal zoning ordinances. *Adams Outdoor Advertising, Inc v City of Holland*, 463 Mich 675, 681; 625 NW2d 377 (2001).

Defendants argue that allowing the property to continue as it was for longer would result in no detrimental effect on plaintiff, other than the property not being aesthetically pleasing. Defendants assert, without supporting authority, that this kind of aesthetic harm is not a municipal entity's legitimate concern. Defendants too hastily discount aesthetic concerns for zoning purposes. See *id*. at 681. Moreover, defendants' focus on the detrimental effects on themselves is also not the proper way to analyze this issue. This discrete part of the analysis concerns the existence of a detrimental effect on "the substantial rights of the opposing party," not a balancing analysis of the effects on both sides. *Heugel*, 237 Mich App at 478-479.

Defendants do not expressly dispute plaintiff's position that the property, in its state at the time relevant, presented a risk of "potentially catastrophic failure." Defendants argue only that, because it was private property, that risk was of no concern to plaintiff. This argument is inapt. Safety is a legitimate concern of municipal zoning ordinances. *Gust*, 342 Mich at 438. Although that safety concern would be particularly present on land open to the public, it is not confined to public places. The property at issue still would pose a risk to anyone who came onto it. Even aside from defendant Rogers himself, or a potential trespasser scenario, there would be persons invited onto the property, or who otherwise would have the lawful right to be there. With this particular property, workers brought in to finish construction and cleanup, and inspectors evaluating the results would be at risk of harm. Even if only defendants themselves or their agents would be at risk, they nonetheless remain persons whom plaintiff has a legitimate interest in protecting from harm. One need only look at the 21-page Lapham report of September 20, 2022, and 19 photographs of the subject property to understand the substantial risks the property presented and the obvious aesthetic concerns.

Defendants do not dispute the inspection's evaluation of the potential danger: "injury or loss of life, or significant damage to property." Defendants acknowledge that plaintiff has given them significant time to remedy the conditions, having refrained from immediately removing the unsafe structures and materials as deadlines have passed, and imply that this lack of action indicates that plaintiff itself does not view the situation as a particularly hazardous one. But that lack of immediate action plainly resulted from a desire to accommodate, and work with defendants, and not from a determination that the property was actually safe after all, or otherwise not of serious concern.

Plaintiff has a right to enforce its ordinances, and also the legal judgments it has obtained. As plaintiff points out, the issue with the subject property has persisted for years, involving time, money, and effort on the part of plaintiff in inspecting and litigating. Safety, and an end to the drain on plaintiff's attention and resources, are clear substantial rights of plaintiff that would be detrimentally affected by setting the judgment aside. See *Heugel*, 237 Mich App at 478-479. Even aesthetics may be a legitimate, if lesser, concern here. The trial court therefore did not abuse its discretion by not finding a lack of a detrimental effect on plaintiff's substantial rights. This

detrimental effect on plaintiff's substantial rights in fact provided an additional basis for the trial court's rejection of defendants' motion.

Affirmed.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado