# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS HENRY LEAGON,

Plaintiff-Appellant,

v

EILEEN CAROL LEAGON,

Defendant-Appellee.

UNPUBLISHED
July 11, 2017

No. 334922
Genesee Circuit Court
LC No. 12-306796-DM

Before: O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals as of right an opinion and order denying his motion to change custody of his and defendant's two minor children, IJL and BRL (the children or the girls), and denying plaintiff's request for an award of attorney fees. We affirm.

Plaintiff first argues that the trial court's findings regarding four of the best interest factors listed in MCL 722.23 were against the great weight of the evidence. We disagree.

"Three different standards govern our review of a circuit court's decision in a child-custody dispute." *Kubicki v Sharpe*, 306 Mich App 525, 538; 858 NW2d 57 (2014). "We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error." *Id*. Under the great weight of the evidence standard, the trial court's findings are affirmed unless the evidence clearly preponderates in the opposite direction. *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). The trial court's credibility determinations are accorded deference give its superior position to make such determinations. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011).

Custody disputes are to be determined on the basis of the best interests of the child, as measured by the 12 factors set forth in MCL 722.23. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). Generally, the trial court must explicitly state its findings and conclusions regarding each factor. *Rivette v Rose-Molina*, 278 Mich App 327, 329-330; 750 NW2d 603 (2008). However, the court is not required to comment on every piece of evidence entered and every argument raised. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). A single circumstance can be considered in determining more than one child custody factor. *Fletcher v Fletcher*, 229 Mich App 19, 24-25; 581 NW2d 11 (1998). "A court need not give equal weight to all the factors, but may consider the relative weight of the

-1-

factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). "[T]he record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre*, 267 Mich App at 452. If a modification of custody would change the child's established custodial environment, the moving party must demonstrate that the change is in the child's best interests by clear and convincing evidence. MCL 722.27(1)(c); *Hunter v Hunter*, 484 Mich 247, 259; 771 NW2d 694 (2009).

Plaintiff does not challenge the trial court's determination that an established custodial environment exists with defendant. Plaintiff argues that the trial court's findings regarding best-interest factors (d), (f), (g), and (j) are against the great weight of the evidence. We disagree.

Plaintiff first challenges the trial court's findings regarding factor (d) (how long the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity). The trial court found as follows regarding factor (d):

> The Court finds that this factor favors Defendant. Defendant has been the primary custodian for the minor children for their entire lives. At the end of their marriage, the parties lived in China with the minor children. Plaintiff left the family, returned to the United States and filed for divorce. The consent Judgment of Divorce granted primary physical custody of the minor children to Defendant. The minor children have lived in the primary custody of Defendant from the parties' separation to the present time. In the summer of 2015, Defendant and the minor children relocated to New Jersey. The minor children currently live in a satisfactory home environment with Defendant and the Court finds that there is a strong desirability of continuing the minor children in the home environment with Defendant; therefore, this factor favors Defendant.

Plaintiff does not challenge the trial court's finding that defendant has been the primary custodian for the children during their entire lives, including from the time of the parties' separation to the present time. Instead, plaintiff claims that defendant is "the source of upheaval in the children's lives[]" because she purportedly "uprooted the children from Michigan to China in favor of her job[]" and then "recently relocated from China to New Jersey." Plaintiff also asserts that he "has a stable home and environment in Hudsonville, Michigan." Plaintiff notes that defendant and the children briefly stayed with relatives in the New York City area before defendant found her current home in New Jersey. Plaintiff cites *Kessler v Kessler*, 295 Mich App 54; 811 NW2d 39 (2011), as supporting his argument that factor (d) favors a parent who elects to stay in Michigan as opposed to a parent seeking to relocate to another state.

Plaintiff's reliance on *Kessler* is misplaced. In *Kessler*, 295 Mich App at 56, the parties' children had resided for their entire lives in Montague, Michigan, where the defendant had grown up and where his parents still lived. The plaintiff sought to move the children to Florida, where neither party had any relatives living, whereas the defendant wished to remain in Montague and have the children remain with him in the marital home. *Id*. at 57. The trial court awarded primary physical custody to the defendant. *Id*. This Court rejected the plaintiff's argument that the trial court had erred in determining that factor (d) favored the defendant. *Id*. at 65. This Court explained:

-2-

We conclude that the trial court's findings on this factor were not against the great weight of the evidence. The children had never lived in Florida, much less lived there for any "length of time," so there could be no continuity to maintain with respect to that environment. For this reason, the environment in Florida was not even relevant under this factor. Although it is true that the divorce would change the environment in Michigan, it was still the only environment the children knew. The children had family, friends, school, church, a godmother, a daycare provider, and others in Michigan. [*Id*. at 65-66.]

The facts in the present case are vastly different from those in *Kessler*. Here, the children have never even lived in Hudsonville, Michigan—where plaintiff now resides in a house owned by his fiancée—aside from staying there during plaintiff's parenting time. The parties and the children lived in Canton, Michigan, before moving to China in 2011. Although plaintiff asserts that the children were "uprooted" from Michigan *by defendant*, it was in fact *both parties as a married couple* who moved with the children to China in 2011. In 2012, plaintiff left the family and moved back to Michigan, while defendant and the children continued living in China *with plaintiff's consent*. In 2015, defendant and the children moved from China to New Jersey after defendant obtained a job in New York City. Plaintiff has extended family members in the New York City area. The children have begun attending school, church, and catechism near their home in New Jersey. The facts here are therefore not even remotely similar to the facts in *Kessler*, in which the children had lived their entire lives in Montague, Michigan, and had no connection to the proposed new home in Florida. Here, defendant moved the children from China to New Jersey, not from an established Michigan home to another state. Overall, the trial court's findings regarding factor (d) were not against the great weight of the evidence.

Plaintiff next challenges the trial court's findings regarding factor (f) (the moral fitness of the parties). "[U]nder factor f, the issue is not who is the morally superior adult, but rather the parties' relative fitness to provide for their child, given the moral disposition of each party as demonstrated by individual conduct." *Berger v Berger*, 277 Mich App 700, 713; 747 NW2d 336 (2008) (quotation marks and citation omitted). The trial court found as follows with respect to factor (f):

> The Court finds that this factor favors Defendant for several reasons. Plaintiff testified to engaging in an extramarital affair during the parties' marriage, Plaintiff was arrested and charged with driving while intoxicated in March of 2013, Plaintiff testified to installing tracking software on the minor children's phones, and Plaintiff testified to accessing Defendant's email without her permission and saving private information for future use. Finally, Plaintiff sent Defendant an email in November 2012 (Trial Exhibit #55) wherein he outlined past moral transgressions. Plaintiff testified that he was not being truthful and exaggerated past facts in the email. Regardless of whether Plaintiff was being untruthful in his email or untruthful on the witness stand, the Court is satisfied that the aforementioned issues raise significant concerns regarding Plaintiff's moral fitness.

Plaintiff generally alleged that Defendant is of dubious moral character; however, the testimony and evidence overwhelmingly favored Defendant as to this factor.

Plaintiff does not contest the trial court's findings that plaintiff engaged in the behavior outlined above, nor does plaintiff contend that any of the behavior cited is by itself an improper consideration under factor (f).[1] Instead, plaintiff asserts that he engaged in the above behavior before the entry of the divorce judgment and that he has not engaged in any moral transgressions after he filed his motion to change custody. Plaintiff also argues that defendant engaged in moral transgressions by lying to and manipulating the children. Plaintiff claims that defendant urged the children to conceal from plaintiff the fact that defendant was planning to move back to the United States and that she lied by telling the children that plaintiff was an alcoholic.

Plaintiff's arguments regarding factor (f) lack merit. He cites no authority establishing that moral transgressions which occurred before the entry of a divorce judgment are barred from consideration under factor (f) or establishing that only moral transgressions that occurred after the filing of a motion to change custody may be considered under factor (f), nor have we found any such authority. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitchell*, 296 Mich App at 524 (quotation marks and citation omitted). "The failure to cite sufficient authority results in the abandonment of an issue on appeal." *Hughes v Almena Twp*, 284 Mich App 50, 72; 771 NW2d 453 (2009). Plaintiff's claim that defendant engaged in various moral transgressions is contradicted by defendant's testimony. Defendant testified that she did not tell the children that plaintiff was an alcoholic. Defendant also denied instructing the children not to tell plaintiff that defendant and the children were moving back to the United States. This Court defers to the trial court's credibility determinations. *Shann*, 293 Mich App at 305. Overall, the evidence does not clearly preponderate against the trial court's findings regarding factor (f).

Plaintiff next challenges the trial court's findings regarding factor (g) (the mental and physical health of the parties). With respect to factor (g), the trial court stated:

The Court finds that this factor favors Defendant. Plaintiff testified that he received Veteran's Administration disability income. Plaintiff testified that he has herniated disks in his neck and severe back pain that prevented him from

---

[1] We note that the woman with whom plaintiff was having an affair was a family friend whose daughters were friends with the parties' daughters. On these facts, it is reasonable to conclude that plaintiff's extramarital affair could have had an effect on the parent-child relationship and was a fair indicator of plaintiff's parenting ability. Cf. *Berger*, 277 Mich App at 712-714 (holding that the trial court properly considered under factor (f) the defendant's affair with the plaintiff's cousin, who was the nanny of the parties' children, because the defendant's actions "demonstrated extraordinarily poor judgment and lack of insight about the effect his conduct could have on everyone in the household, including ultimately the children.").

-4-

sitting for extended periods of time [and] that he is prescribed and takes medications that include muscle relaxants, narcotic pain relievers, and anti-seizure medication. Testimony was presented that Plaintiff has previously had a "mini-stroke" as well.

In contrast, Defendant presented as a healthy individual. The only health [issue] raised concerning Defendant was a stress fracture suffered while exercising[,] and [the stress fracture] did not appear to affect Defendant's ability to parent.

For the reasons stated, the Court finds that this factor clearly favors Defendant.

Plaintiff does not contest the trial court's findings regarding the health problems from which he suffers or the medications that he takes. Nor does plaintiff take issue with the trial court's findings regarding defendant's health status. Rather, plaintiff contends that there is no evidence that his health problems affect his parenting ability; plaintiff notes that he is able and willing to take long automobile trips to New Jersey to spend parenting time with the children.

We find plaintiff's argument unpersuasive. The evidence establishes that defendant is generally healthy; she suffered a minor injury while exercising recently but had no other health issues and was not on any prescription medications. By contrast, plaintiff has multiple health issues and receives disability benefits from the Veterans Administration. Plaintiff has herniated discs in his neck, for which he take numerous medications. His fiancée indicated that plaintiff is in a lot of pain and needs to have an MRI done on his lower back. Plaintiff likewise testified that his neck and back are extremely painful. In 2012, plaintiff suffered what he and his fiancée described as a "mini-stroke." According to defendant, plaintiff told her that his arm had been partially paralyzed and that he needed her help to "prepare" the girls. Defendant testified that plaintiff said he had been diagnosed as suffering from bipolar disease and posttraumatic stress disorder. During the parties' marriage, plaintiff told defendant that he had tried to commit suicide when he was younger. In 2012, plaintiff sent an email to defendant saying, "I asked for recommendations of people I could talk to for my head and the suicide attempts, that I can – can't even get right and wouldn't recommend a shrink." Plaintiff testified at the evidentiary hearing that the reference in the email to suicide attempts was the result of "an auto-correct nightmare." Plaintiff could not explain, however, what language was autocorrected to say "suicide attempts" in the email. Overall, the evidence supports the conclusion that plaintiff suffers from numerous physical and mental health challenges, and it is reasonable to infer that his significant health issues could affect his parenting ability. Therefore, the evidence does not clearly preponderate in the opposite direction of the trial court's findings on this factor.

Finally, plaintiff challenges the trial court's findings regarding factor (j) (the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the children and the other parent). The trial court found as follows with respect to factor (j):

The Court finds that neither party is favored by this factor in any significant fashion. Although the parties do not get along, both parties credibly testified to encouraging a close parent-child relationship between their children

and the other parent. The Court notes that a significant amount of animosity was apparent during this case; however, the Court finds that both parties share an understanding of the importance to their minor children that the opposing party is a part of their lives.

Plaintiff acknowledges that defendant's testimony indicated that she would facilitate and encourage a close parent-child relationship between the children and plaintiff, but plaintiff argues that other testimony contradicted defendant's claim. Plaintiff notes IJL's testimony that defendant told IJL that plaintiff was an alcoholic. Plaintiff refers to testimony that defendant punished IJL for Skyping with plaintiff and that defendant has tried to listen in on conversations between IJL and plaintiff. Plaintiff says that he does nothing to hinder IJL's communication with defendant. Plaintiff cites testimony from one of defendant's coworkers indicating that defendant said she did not wish to work in close proximity to plaintiff. Based on the evidence presented, plaintiff argues that the trial court should have found that factor (j) weighed in his favor.

Plaintiff's argument regarding factor (j) is unavailing. The trial court credited defendant's testimony indicating that she was willing and able to facilitate and encourage a close and continuing parent-child relationship between plaintiff and the children. Defendant testified that plaintiff is a good dad. Defendant explained that she tells the children positive things about plaintiff, including that plaintiff loves them and that the children are lucky to have two loving parents. Defendant denied that she told the children that plaintiff is an alcoholic. Defendant also denied that she punished IJL for Skyping with plaintiff. Defendant testified that she has never prevented the girls from communicating with plaintiff while the girls were with defendant and has never spied on the girls' conversations with plaintiff. Defendant encourages the girls' relationship with plaintiff by telling them to call him and asking if they have Skyped with him. When IJL won an award in a film festival in China, defendant asked IJL to tell plaintiff about it or to send him pictures. The children can communicate with plaintiff through their cell phones. Defendant has sometimes grounded IJL from using the internet generally, but any communication with plaintiff is never a part of any such grounding; IJL's phone and computers are always accessible for communication with plaintiff.

Defendant further testified that, since the divorce judgment was entered, she has agreed to provide plaintiff with more parenting time than was authorized by the trial court. Defendant explained that she does not dictate parenting time terms or hinder plaintiff's use of parenting time. The trial court ordered that plaintiff would have parenting time over Thanksgiving of 2015, but plaintiff did not exercise that parenting time. Defendant testified that she believes it is in the girls' best interests to see plaintiff. Defendant stated that the door is open for plaintiff to come to New Jersey to be a part of the girls' lives, in addition to his exercise of parenting time with the girls in the summer and during holidays. The trial court found defendant's testimony credible with regard to this factor, and this Court defers to the trial court's credibility determinations. *Kessler*, 295 Mich App at 67; *Shann*, 293 Mich App at 305. Accordingly, the evidence does not clearly preponderate against the trial court's finding that neither party was significantly favored with respect to factor (j).

Plaintiff next argues that the trial court abused its discretion in denying plaintiff's request for attorney fees. We disagree.

"We review a trial court's ruling on a request for attorney fees for an abuse of discretion." *Smith v Smith*, 278 Mich App 198, 207; 748 NW2d 258 (2008). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. Any findings of fact on which the trial court based its decision are reviewed for clear error. *Richards v Richards*, 310 Mich App 683, 700; 874 NW2d 704 (2015). Clear error is deemed to exist when this Court is definitely and firmly convinced that a mistake has been made. *Id*. Any questions of law are reviewed de novo. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Questions of statutory interpretation are also reviewed de novo. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 98; 693 NW2d 170 (2005). Unambiguous statutory language must be applied as written. *White v Harrison-White*, 280 Mich App 383, 387; 760 NW2d 691 (2008).

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed*, 265 Mich App at 164 (citation omitted). "In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, MCR 3.206(C)." *Id*. MCL 552.13(1) provides, in relevant part, that a court may require either party "to pay any sums necessary to enable the adverse party to carry on or defend the action," and "may award costs against either party . . . ." MCR 3.206(C) addresses the award of attorney fees in domestic relations matters as follows:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply.

"Attorney fees in a divorce action are awarded only as necessary to enable a party to prosecute or defend a suit but are also authorized when the requesting party has been forced to incur expenses as a result of the other party's unreasonable conduct in the course of litigation." *Richards*, 310 Mich App at 700 (quotation marks and citation omitted). As such, "MCR 3.206(C)(2) provides two independent bases for awarding attorney fees and expenses." *Id*. "Whereas MCR 3.206(C)(2)(a) allows payment of attorney fees based on one party's inability to pay and the other party's ability to do so, MCR 3.206(C)(2)(b) considers only a party's behavior, without reference to the ability to pay." *Id*. at 701. "The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007).

In denying plaintiff's request for attorney fees, the trial court stated:

Plaintiff argues that he is entitled to contribution to attorney fees from Defendant because he is unable to bear the expense of the action and that Defendant is able to endure the cost. The Court is not persuaded. Although Defendant earns more income than Plaintiff, Defendant incurred a large balance of attorney fees as well; significantly more than Plaintiff. Defendant argues that she is unable to bear her own costs of defending the action and has incurred nearly $90,000.00 in attorney fees. Further, the Court in [*Gove v Gove*, 71 Mich App 431, 435; 248 NW2d 573 (1976),] stated that attorney fees are awarded not as of right but "only if necessary." *Id*. After the conclusion of the proofs, the Court finds that Plaintiff's request for attorney fees fails on multiple levels. Plaintiff has failed to show that Defendant is able to afford contribution to Plaintiff's attorney fees when Defendant herself had a significant outstanding balance as of the last day of trial. Plaintiff has also been unsuccessful in persuading the Court that the attorney fees he incurred in his action were necessary for him to carry on this litigation; a litigation in which he was ultimately unsuccessful on the heavily litigated issue of physical custody. The Court explicitly denies Plaintiff's request for attorney fees pursuant to MCR 3.206(C)(2)(b). The Court is not persuaded that the attorney fees Plaintiff incurred were a result of Defendant refusing to comply with a previous order of this Court, despite having the ability to comply.

The Court further notes that a provision of the parties' consent Judgment of Divorce states that the parties would each be responsible for their own attorney fees, not only in the original divorce action but also in "any action between the parties arising or related to the Judgment of Divorce." The Court in this matter has not been presented with sufficient cause to deviate from the parties' consent Judgment of Divorce as to attorney fees.

Plaintiff argues that he should have been granted attorney fees under MCR 3.206(C)(2)(a) because of the parties' disparate incomes. We disagree. Plaintiff testified that his monthly income from veteran's disability benefits is $3,095, and that he has incurred more than $26,000 in attorney fees. Plaintiff has a master's degree in public administration and is looking for work. Defendant earns $175,000 a year, and she owes approximately $86,000 in attorney fees for this case. In addition, defendant has other debts, including a mortgage of approximately $385,000 on the house in which she and the children live. By contrast, plaintiff lives in a house owned by his fiancée. Although the parties have disparate incomes, defendant owes a larger outstanding attorney fee balance and has other debts including a substantial mortgage. Plaintiff fails to address his expenses or the relative cost of living in Hudsonville, Michigan, where he lives, and the New York City area, where defendant lives. The trial court's conclusion that plaintiff failed to present sufficient facts to establish either that plaintiff was unable to pay his attorney fees or that defendant was able to pay plaintiff's attorney fees fell within the range of principled outcomes.

Plaintiff contends that the trial court should have awarded him attorney fees under MCR 3.206(C)(2)(b) because defendant took the children on a vacation to the Philippines, which was not a party to the Hague Convention on the civil aspects of child abduction, in contravention of a

provision in the judgment of divorce. We disagree. Plaintiff fails to address the fact that the trial court declined to hold defendant in contempt for this matter. The trial court stated:

> In the present case, after conclusion of the proofs, the Court declines to hold Defendant in contempt for taking the minor children to the Philippines on a diving vacation. Plaintiff failed to show that Defendant knew the Philippines was not a party to the Hague Convention on Child Abduction before the trip. Further, the Court does not find that an adjudication of contempt is appropriate to compel Defendant into compliance with the Court's orders.

A trial, defendant testified that she had conducted an internet search and thought that the Philippines was a party to the Hague Convention. She explained that she later learned that the Philippines was not a party to the Hague Convention regarding child abduction, but she could not recall when. When pressed, defendant acknowledged that her deposition transcript indicated that she knew before leaving for the Philippines that it was not a party to the Hague Convention regarding child abduction. Thus, there is some support for plaintiff's contention that defendant intentionally disregarded a court order. However, that does not end the inquiry under MCR 3.206(C)(2)(a), which requires a showing that the requested attorney fees "were incurred *because* the other party refused to comply with a previous court order." (Emphasis added.) Even assuming defendant refused to comply with the judgment of divorce by taking the children to the Philippines, plaintiff has failed to present any facts establishing the amount of fees that were incurred because of the alleged misconduct. See *Reed*, 265 Mich App at 165 (requiring a causal connection to exist between the alleged misconduct and the attorney fees that were incurred). Plaintiff also cursorily asserts that he is entitled to attorney fees because defendant improperly moved for a directed verdict before plaintiff rested, but he provides no argument explaining how this constitutes the type of unreasonable conduct or refusal to comply with an order that would merit an attorney fee award. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitchell*, 296 Mich App at 524 (quotation marks and citation omitted). Again, plaintiff has failed to present facts establishing the amount of fees incurred due to this alleged misconduct.

Next, plaintiff makes a cursory argument that he was entitled to attorney fees under MCL 722.1311 because he expended attorney fees to oppose a "motion" by defendant asserting that the trial court lacked jurisdiction. Plaintiff fails even to quote the language of MCL 722.1311, let alone explain how the language supports his argument that he was entitled to attorney fees. Again, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (citations omitted). Plaintiff's argument regarding this provision has been abandoned given his cursory appellate presentation. See *id*. In any event, plaintiff's argument lacks merit. MCL 722.1311, which is part of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.*, provides:

> (1) The court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs,

communication expenses, attorney fees, investigative fees, witness expenses, travel expenses, and child care expenses during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

(2) The court shall not assess fees, costs, or expenses against a state except as otherwise provided by law other than this act.

Plaintiff fails to explain why or how he qualifies as "the prevailing party" when he did not prevail in his motion to change custody. Plaintiff also fails to address the fact that MCL 722.1311 is part of Article 3 of the UCCJEA, which pertains to *enforcement* of a child custody determination or of an order for the return of a child made under the Hague Convention. See MCL 722.1302(1); MCL 722.1303; MCL 722.1307. It is Article 2 of the UCCJEA that pertains to jurisdiction. See MCL 722.1201 *et seq*. Plaintiff offers no explanation of how this litigation involves an action to enforce a child custody determination or an order for the return of a child. This litigation concerned primarily a motion to change custody in which plaintiff did not prevail. Plaintiff has failed to establish that he was entitled to attorney fees under MCL 722.1311.

Finally, plaintiff argues against enforcement of the provision in the consent divorce judgment providing that each party is responsible for his or her own attorney fees. Specifically, the consent judgment of divorce provides: "Each party will be responsible for his or her own attorneys' fees and costs, including expert fees, incurred in the Divorce Action or any action between the parties arising from or related to this Agreement." Plaintiff does not challenge the proposition that the present litigation occurred in the divorce action or an action "arising from or related to" the consent judgment of divorce. Instead, his argument implicitly assumes the applicability of the attorney fee provision but suggests that it is contrary to public policy.

It is unnecessary to address this argument because, as explained, plaintiff has failed to establish entitlement to attorney fees under the court rule, statutes, and case law discussed above. In any event, plaintiff's argument lacks merit. This Court has enforced parties' agreements regarding attorney fees in divorce cases. In *Elahham v Al-Jabban*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 326775), slip op at 2, the defendant argued that the trial court had abused its discretion by awarding attorney fees to the plaintiff without finding that the defendant had the ability to pay or that he had violated a court order. This Court rejected the defendant's argument: "We conclude that defendant waived the issue by agreeing at the outset of the case to pay plaintiff's attorney fees. Therefore, we decline to address the issue [of] whether the trial court abused its discretion by granting attorney fees to plaintiff." *Id*. at 2. See also *Vittiglio v Vittiglio*, 297 Mich App 391, 402-405; 824 NW2d 591 (2012) (rejecting challenges to a divorce settlement agreement that required, *inter alia*, the plaintiff to pay $50,000 of the defendant's attorney fees); *Rose v Rose*, 289 Mich App 45, 51; 795 NW2d 611 (2010) (listing attorney fees among the items that parties may include in settlement agreements), citing *Staple v Staple*, 241 Mich App 562, 579; 616 NW2d 219 (2000). Plaintiff has failed to establish that the agreement regarding attorney fees violates public policy.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens