*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID G. OSIM,

        Plaintiff-Appellant,

v

JILL E. SCOTT,

        Defendant-Appellee.

UNPUBLISHED
October 31, 2019

No. 342237
Crawford Circuit Court
Family Division
LC No. 11-008659-DO

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, David Osim, appeals by delayed leave granted[1] the trial court's order modifying spousal support and awarding defendant, Jill Scott, spousal support of $480.75 biweekly or $961.50 monthly. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

The parties divorced in 2012 after nearly 35 years of marriage. They entered into a consent judgment and a property settlement that disposed of their marital assets, but they were unable to agree on spousal support. Plaintiff had worked for AT&T for over 20 years, while defendant had not worked during the marriage. Defendant was a stay-at-home mother and also has significant health problems. The property settlement gave defendant half of the value of plaintiff's 401(k) plan, half of their joint checking and savings accounts, half of plaintiff's Social Security benefits, and half of the stocks they owned. The parties agreed that defendant would keep the marital home (free and clear of any liens), while plaintiff would keep his pension. The parties could not agree on how much spousal support plaintiff should pay defendant, so they submitted the issue to the trial court for resolution. The trial court calculated a monthly support payment of $2,000, which was permanent (until defendant's death or remarriage) and modifiable, and added this provision to the consent judgment, which the parties subsequently

---

[1] *Osim v Scott*, unpublished order of the Court of Appeals, entered August 22, 2018 (Docket No. 342237).

signed. This monthly support payment was more than defendant originally requested and was ordered due to defendant's health concerns. The trial court notified the parties that plaintiff could ask to modify the spousal support obligation when he retired. Plaintiff retired in December 2016, and filed a motion to eliminate spousal support, arguing that his only source of income was the pension he received in full in the property settlement.[2] After an evidentiary hearing, the trial court rejected plaintiff's argument and reduced plaintiff's monthly spousal support obligation to $961.50 to reflect his reduced income. This appeal followed.

"A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract. Interpretation of unambiguous and unequivocal contract language is a question of law. This Court reviews de novo questions of law." *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004) (citation omitted). This Court reviews a trial court's discretionary award of spousal support for an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). This Court reviews a trial court's fact findings for clear error. *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). "A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Loutts*, 298 Mich App at 26. "If the trial court's findings are not clearly erroneous, this Court must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000). This Court will affirm a trial court's ruling on spousal support "unless we are firmly convinced that it was inequitable." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010).

On appeal, plaintiff first argues that the trial court erred by considering his pension he received in the property settlement as income for the purpose of calculating spousal support.[3] We agree.

Because a consent judgment of divorce is in the nature of a contract, "[i]f no reasonable person could dispute the meaning of ordinary and plain contract language, the Court must accept and enforce contractual language as written." *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). "It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged." *Vittiglio v Vittiglio*, 297 Mich App 391, 400; 824 NW2d 591 (2012) (citation omitted).

Here, there has been no allegation of fraud, duress, mutual mistake, or a lack of understanding of the nature and effect of the agreement. There is also no allegation of ambiguity. The divorce judgment concerning the distribution of assets and obligations, which was negotiated and agreed to by the parties, thus must be enforced as written and the trial court is bound to the settlement.

---

[2] In addition to social security benefits.

[3] Neither party disputes the trial court's determination that a change in circumstances occurred due to plaintiff's retirement and that the spousal support award should thus be revisited.

The parties each represented themselves in the divorce proceedings. In a signed writing provided to the trial court on January 6, 2012, defendant wrote, in relevant part, that in the divorce action she wanted spousal support of $1,600 per month for 10 years, half of plaintiff's 401k, half of his IRA, half his social security, and the house and land and everything in it except plaintiff's personal items. Plaintiff further wrote, "[i]f agreed to, I won't pursue his retirement. I feel this is fair considering he'll have a big retirement amount he won't have to share." Approximately three months later, the parties submitted a written divorce agreement to the trial court, signed by both parties, which was attached to and incorporated in the April 19, 2012 judgment of divorce. The divorce agreement and judgment provided that defendant received the marital home and land, half of the parties' stocks, half of plaintiff's 401(k), half of plaintiff's social security, and her own IRA. It further provided that plaintiff would keep his own IRA and pension. The agreement allowed the trial court to calculate a spousal support payment, indicating that defendant had asked plaintiff to pay $1,600 per month in spousal support for 10 years. The trial court added a page to the judgment of divorce awarding defendant permanent (except in the case of defendant's death or remarriage), modifiable spousal support of $2,000 per month. The trial court acknowledged the parties' explicit agreement concerning the pension in its opinion and order ("The transcript [] makes it clear that the Plaintiff agreed to allow the Defendant to receive the marital home (which was debt free) and in exchange she gave up her 50% interest in the Plaintiff's pension.").

In its opinion modifying the spousal support, the trial court opined that, based on the evidence, neither party had the ability to continue working in more than a part-time capacity. It found the property awarded to each party in the divorce as a compelling reason for modification of the spousal support award. The trial court stated that at the time of the divorce, the marital home awarded to defendant was "somewhere between the Plaintiff's appraisal of $115,000 and the Defendant's submission of the SEV based value of $86,258." It noted that no party provided direct evidence of the value of plaintiff's pension at the time of the divorce, but that because the value of plaintiff's lump sum pension payout was $441,303.96 at the time of his December 2016 retirement, "there can be little question . . . that its value in 2012 was significantly higher than that of the home." The trial court concluded that, "in terms of the amount of property awarded in the judgment of divorce, the Plaintiff received significantly more value by receiving his entire pension than the defendant did by receiving the home." It further concluded that the predecessor judge who conducted the *pro confesso* hearing and entered the judgment of divorce was clearly not aware of this disparity, did not take it into account, and that the initial spousal support award was based on an assumption that marital home and pension were equal in value. We do not see this borne out in the record.

At the April 19, 2012 *pro confesso* hearing, the trial court took great effort to properly award the spousal support award. It stated on the record that defendant would have been entitled to half of plaintiff's pension, inquired into the health of both parties, considered the availability of health insurance for defendant after the divorce, and specifically asked plaintiff the amount of his pension. Plaintiff advised the trial court that his employer did not allow for lump sum payments of pensions, but that his estimated monthly pension benefit was approximately $1,870 per month. Obviously, the policy of plaintiff's employer changed and plaintiff did in fact take a lump sum payout for his pension, rather than a monthly benefit. However, that does not negate the fact that the trial court properly took into account the pension when crafting the award of spousal support.

Moreover, it is abundantly clear from defendant's initial writing to the court, the statements by the parties and the trial court, the written agreement and judgment of divorce, and the testimony at the evidentiary hearing[4] that defendant was fully aware that plaintiff would be receiving his pension in exchange for her receiving the marital home and property. There is no indication or allegation that plaintiff misrepresented the value of the pension, or that defendant was denied the opportunity to obtain the value of the pension, should she have chosen to do so. "When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *Rose v Rose*, 289 Mich App 45, 62; 795 NW2d 611 (2010).

In *Rose, id*. at 47, the parties ended their 22 year marriage by negotiating the terms of their divorce. The defendant husband had $6 million in stock in a company he owned and wanted to avoid liquidating or selling. Instead of converting the defendant's holdings into cash, the parties agreed that defendant would pay plaintiff nonmodifiable spousal support in the amount of $230,000 a year and that plaintiff would forgo any interest in the company. These provisions were contained in the parties' judgment of divorce. *Id*. at 48. Unfortunately, the defendant's company went insolvent and ceased operations two years later. The defendant thereafter moved for modification of the spousal support award and for relief from the judgment the trial court granted the motion, reducing the defendant's support obligation to $900 per month. *Id*. at 49. This Court found that, "[g]iven the judgment's clearly expressed, enforceable, and nonmodifiable spousal-support wording, we conclude that the circuit court erred by failing to afford proper deference to the parties' binding agreement." *Id*. at 59. We stated:

> In this case the circuit court reasoned that because spousal support is "equitable in nature," plaintiff "is only entitled to an equitable amount of spousal support." [The business's] demise, in the circuit court's estimation, rendered "unconscionable" plaintiff's enforcement of the spousal-support agreement and, consequently, did not detrimentally affect her substantial rights. We reject this analysis for the simple reason that by entering into a divorce judgment with a nonmodifiable support provision, the parties conclusively waived their rights to a judicial determination of equitable spousal support. The circuit court's invocation of its equitable authority to modify spousal support pursuant to MCL 552.28 ignores and invalidates the parties' election to forgo flexibility and their explicit waiver of the right to seek support modifications based on equitable considerations. Rather, the parties' carefully crafted compromise reflects their willingness to accept that changed circumstances might render this election unfair to one or the other. [*Id*. at 60]

This Court emphasized the importance of the right to freely contract, emphasizing that "the judiciary is without authority to modify unambiguous contracts or rebalance the contractual

---

[4] Defendant testified that if plaintiff had wanted to sell the house and split the proceeds, she would have wanted half of his pension. She testified that she understood when the judge at the *pro confesso* hearing stated that she could have had half of his pension.

equities struck by the contracting parties because fundamental principles of contract law preclude such subjective post hoc judicial determinations of 'reasonableness' as a basis upon which courts may refuse to enforce unambiguous contractual provisions." *Id*. at 60, quoting *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005).

Similarly here, the parties negotiated and agreed to be bound by the judgment of divorce with respect to the award of the pension. They did not request the trial court's opinion on the fairness of this provision when they agreed to it or entered it into their judgment of divorce, and should not be bound by a trial court's later idea of fairness. The parties clearly treated the pension as a marital asset to be distributed in accordance with their agreement, and the trial court was required to distribute (and keep the distribution) of this asset in accordance with the parties' agreement. See, e.g., *Lee v Lee*, 191 Mich App 73, 76; 477 NW2d 429 (1991) ("given their stipulation that it was a marital asset, we hold that the trial court should have divided the pension as it did the other marital assets."). The trial court's reference to and reliance on what it deemed to be an inequitable value in favor of plaintiff due to his receiving his entire pension when compared to the value defendant received by retaining the marital home was thus improper.

Plaintiff relies on *Weaver v Weaver*, 172 Mich App 257; 431 NW2d 476 (1988), to argue that the trial court could not consider his pension, it having been awarded solely to him, for purposes of calculating spousal support. We agree. In *Weaver*, the husband was awarded his pension as part of the parties' property settlement. The husband also had to pay the wife spousal support. After he retired, the husband sought to eliminate the spousal support payments, contending that the pension was his only source of income. *Id*. at 259. This Court found that, "to reclassify this property award [of the husband's pension] as income for purposes of determining alimony would allow the spouse not receiving the pension to obtain part of an asset which was already awarded to the pension-receiving spouse and for which the spouse not receiving the pension had already obtained offsetting property." *Id*. at 262. While not binding upon this Court due to the date of the decision (see MCR 7.215(J)), we find the holding in *Weaver* to be convincing.

Plaintiff and defendant in this matter reached an agreement wherein he was to receive his pension as part of the property settlement between the parties. It is thus now his asset, free and clear of any claim of defendant, as was the pension in *Weaver*. It is no different than if plaintiff had been awarded property or any other tangible asset in the settlement agreement and divorce judgment, and that asset had increased in value since the date of the divorce. The fact is, once the asset was awarded, that asset is not subject to invasion by the former spouse, even indirectly, which is precisely what occurred when the trial court essentially considered the pension amount as income attributable to plaintiff for purposes of determining an appropriate spousal support modification amount. The trial court here, just as in *Weaver*, erred in doing so.

However, that does not necessarily mean that *any* consideration of the amount of plaintiff's pension for purposes of calculating an amendment to spousal support is precluded. The terms of the consent judgment allowed modification of spousal support, and the principles generally governing modification of spousal support, "i.e., support must be just and reasonable under the circumstances and should balance the incomes and needs of the parties in a way that will not impoverish either party," controlled. *Id*. at 4-5. Thus, the current amount of the pension is relevant to the extent of how the award of the pension to plaintiff now affects the incomes and

needs of the parties. This consideration is part of the trial court's review of the spousal support factors in calculating the modified support amount.

Plaintiff next argues that the trial court did not properly consider the spousal support factors and used an arbitrary formula to calculate spousal support. "The primary purpose of spousal support is to balance the parties' incomes and needs so that neither party will be impoverished, and spousal support must be based on what is just and reasonable considering the circumstances of the case." *Loutts*, 298 Mich App at 32. Spousal support "can be modified upon a showing of changed circumstances." *McCallister*, 205 Mich App at 86. In this case, there is no dispute that plaintiff's retirement was a changed circumstance allowing modification of spousal support.

Trial courts should consider the following factors when determining spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Myland*, 290 Mich App at 695 (quotation marks and citation omitted).]

Not all factors will be relevant or weighted equally. *Gates v Gates*, 256 Mich App 420, 424; 664 NW2d 231 (2003).

The trial court determined that continued spousal support for defendant was warranted for several reasons, one of which (the parties' agreement regarding the equitable distribution of marital assets) we have previously rejected as improper. Aside from the improper reason, the trial court found the following: that the value of plaintiff's pension was significantly greater than the value of the house, which was not a liquid asset that defendant could use toward expenses; that even with a reduced income, plaintiff had the ability to pay support; and, that defendant did not previously work and did not have a pension to draw on, and continued to depend on spousal support. Plaintiff cited no record evidence to refute these findings and we find no error in the trial court's consideration or determination of these issues.

Plaintiff also asserts that the trial court failed to impute an income to defendant. The trial court noted that defendant worked part-time, but her age and health limited her earning ability. Defendant testified that she earned $10,000 the previous year and that she did not anticipate being able to work indefinitely because of her arthritis. The trial court's acknowledgment of defendant's part-time work and limited earning potential signaled its consideration of this factor and implicit determination that defendant's earnings were not likely to continue for long. Plaintiff cited no record evidence to show that this finding was clearly erroneous.

Though the trial court used the standard guidelines for calculating support given the duration of the marriage and the age of the parties, not an ad hoc formula, we question the actual

method the trial court employed in determining the amount of the spousal support award. The trial court noted that the record of the divorce proceeding concerning the property division revealed that defendant agreed to give up any claim to one-half of plaintiff's pension in exchange for the marital home. The court further noted plaintiff's failure to establish the present value of the pension at the time of the divorce in April 2012 and determined, considering its current value of nearly $450,000, that it was close to $400,000, which was $300,000 more than the approximate value of the house at that time ($100,000). The trial court then divided the $300,000 difference by defendant's assumed remaining life expectancy of approximately 26 more years to arrive at a monthly amount of $961.50. The trial court essentially found that defendant was entitled to three-quarters of the value of the pension, which does not make sense.

While we do not find that the trial court erred by concluding that the disparity between the parties' liquid assets required a balancing of the equities, we note that while plaintiff received a payout of approximately $440,000 for his pension, there are several issues concerning this payout that the trial court did not address and presumably did not consider. First, plaintiff likely had tax consequences on the payout that were not considered by the trial court. Second, whatever the present value amount of the pension in 2012, plaintiff may have made additional contributions to the pension *after* the judgment of divorce was entered, as may have his employer, which could have led to a substantial increase in its value since the 2012 divorce. Third, while plaintiff indicated that he was currently receiving approximately 5% interest on the buyout amount he had placed into an account, that may not have been the case throughout all of the years since the divorce and may not be the case going forward. Fourth, plaintiff testified that he had and anticipated continuing to withdraw $24,000 to live on each year out of the account holding his pension and the buyout was almost plaintiff's entire income for him to live on for the rest of his life. These are significant factors that may well affect plaintiff's ability to pay spousal support. Accordingly, we remand for the trial court to reconsider the modified award of spousal support, taking into account the above as well as any additional information it may deem relevant.

In sum, the trial court did not err by concluding that spousal support should be reduced but not eliminated, but the trial court did err in its calculation of the modified award. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause

-7-